GOLD BENNETT CERA & SIDENER LLP
Solomon B. Cera (SBN 99467)
Thomas C. Bright (SBN 169713)
595 Market Street, Suite 2300
San Francisco, California 94105
Telephone: (415) 777-2230
Facsimile: (415) 777-5189
scera@gbcslaw.com
tbright@gbcslaw.com

-and-

THE ROSEN LAW FIRM, P.A.
Laurence M. Rosen (SBN 219683)
Jonathan Horne
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Attorneys for Lead Plaintiffs
and All Others Similarly Situated

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CHINA INTELLIGENT LIGHTING AND ELECTRONICS, INC. SECURITIES LITIGATION | Case No.: 2:11-cv-02768-PSG (SSx) **CLASS ACTION** |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | **CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE SECURITIES LAWS** |

## **TABLE OF CONTENTS**

**Page**

I.      SUMMARY OF THE ACTION ................................................................2

II.     JURISDICTION AND VENUE.............................................................6

III.    PARTIES ................................................................................................6

      A.      Lead Plaintiffs ...........................................................................6

      B.      Issuer Defendant ........................................................................7

      C.      CIL Individual Defendants .......................................................7

      D.      Underwriter Defendants.............................................................8

      E.      Accounting Defendants............................................................11

IV.     CLASS ACTION ALLEGATIONS .....................................................12

VI.     THE GENESIS OF CIL ......................................................................14

VI.     CIL PUBLIC OFFERINGS AND SALE OF COMMON STOCK...............18

VII.    FALSE STATEMENTS IN THE REGISTRATION STATEMENTS AND
        PROSPECTUSES .................................................................................21

VIII.   THE TRUTH IS REVEALED .............................................................24

IX.     ACCOUNTING DEFENDANTS' NEGLIGENCE .......................................32

X.      PROOF OR RELIANCE IS UNNECESSARY....................................35

XI.     NO SAFE HARBOR............................................................................36

FIRST CLAIM ................................................................................................37

Violation of Section 11 of the Securities Act Against all Defendants Except
Rappaport and Pintsopoulos

SECOND CLAIM ...........................................................................................40

Violation of Section 11 of the Securities Act Against MaloneBailey LLP,Kempisky
& Co., P.C., Kui Jiang, Li Xuemei, Wu Shiliang, Michael Askew, Su Yang, and
Zhang Hongfeng

THIRD CLAIM ...............................................................................................43

Violations of Section 15 of the Securities Act Against the Individual Defendants

FOURTH CLAIM ...........................................................................................45

Violations of Section 15 of the Securities Act Against Kui Jiang, Li Xuemei, Wu
Shiliang, Michael Askew, Su Yang, and Zhang Hongfeng

FIFTH CLAIM ................................................................................................47

Violation of §12(a)(2) of the Securities Act Against All Defendants Other than the
Accounting Defendants, Borer, Rubin, and Horin

JURY TRIAL DEMANDED..........................................................................49

i

Lead Plaintiffs Perritt Emerging Opportunities Fund, Universal Invest Quality SICAV, Acerco SA, and Antoine de Sejournet, (collectively "Lead Plaintiffs") through their attorneys, bring this action on behalf of themselves and all others similarly situated, and allege as follows.  The allegations herein are based on personal knowledge as to the Lead Plaintiffs as to their own acts, and upon information and belief as to all other matters.  Lead Plaintiffs' information and belief is based on, *inter alia*, the investigation of Lead Plaintiffs' counsel.  This investigation has included a review of: (1) China Intelligent Lighting and Electronic, Inc.'s ("CIL" or the "Company") public filings with the Securities and Exchange Commission ("SEC"); (2) public announcements made by CIL; (3) wire and press releases published by and regarding the Company; (4) securities analysts' reports and advisories about the Company; (5) transcripts of quarterly earnings calls with CIL management; (6) CIL public filings with the State Administration of Industry and Commerce of the People's Republic of China ("SAIC")[1]; (7) information obtained from Chinese sources; (8) articles in the general and financial press; and (9) information readily obtainable on the Internet.

---

[1] The SAIC is primarily responsible for business registration, business licenses, and acts of the government supervisor of corporations in the People's Republic of China.  The SAIC is the Chinese government registrar for official documents such as articles of incorporation, legal persons, registered capital and company ownership.  In order to renew their annual business licenses, all Chinese companies must file a "Company Annual Inspection Report" with the SAIC between March and June every year.  This report includes financial statements such as a balance sheet and an income statement, but those numbers are not verified or audited by the SAIC.

The investigation of Lead Plaintiffs' counsel into the factual allegations contained herein is continuing.  Many of the relevant facts are known only by the Defendants, or are exclusively within their control or custody.  Lead Plaintiffs believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## I.

## SUMMARY OF THE ACTION

1.    This action is brought pursuant to the Securities Act of 1933, 15 U.S.C. §77k et seq. (the "Securities Act") by the Lead Plaintiffs on their own behalf and as a class action on behalf of all persons or entities who purchased or otherwise acquired CIL securities pursuant to or traceable to two (2) separate Registration Statements and three (3) accompanying Prospectuses filed with the SEC by CIL (the "Class").  The Registration Statement for an initial public offering ("IPO") of CIL common stock was declared effective by the SEC on June 17, 2010 (No. 333-164925) and was accompanied by a Prospectus filed with the SEC on June 21, 2010 (collectively the "IPO Registration Statement").  Also related to this Registration Statement was a Resale Prospectus filed with the SEC on July 27, 2010 ("Initial Resale Prospectus").  An additional Registration Statement was declared effective by the SEC on December 15, 2010 (No. 333-170943), and was accompanied by a Prospectus filed with the SEC on December 15, 2010 (collectively the "Secondary Resale Registration Statement").  The Registration Statement declared effective by

the SEC on June 17, 2010 (No. 333-164925) and the Registration Statement filed with the SEC on December 13, 2010 (No. 333-170943) are collectively referred to as the "Registration Statements".

2.      All persons and entities who purchased or otherwise aquired CIL common stock between June 18, 2010 and March 24, 2011 (the "Class Period") can trace their shares to one of the Registration Statements.  CIL has not issued an earnings statement covering a period of at least twelve (12) months beginning after the effective date of the IPO Registration Statement.

3.      Pursuant to the IPO Registration Statement, the Company offered 3,350,00 shares of CIL common stock at $3.00 per share.  The Initial Resale Prospectus related to the resale of up to 1,377,955 shares of CIL common stock by certain selling shareholders.  The Secondary Resale Registration Statement related to the resale of up to 1,858,323 shares of CIL common stock by certain selling shareholders.  The IPO and the two resales of CIL common stock are referred to hererin as the "Offerings."

4.      As set forth below, the IPO Registration Statement, the Initial Resale Prospectus and the Secondary Resale Regisration Statement (collectively, the "Offering Documents" ) contained material misstatements and omitted material information in violation of Sections 11, 12(a)(2) and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77k, 77l(a)(2) and 77o.  Defendants are strictly or negligently

liable for material misstatements and omissions in these documents under the

Securities Act.  This Complaint asserts no allegations or claims sounding in fraud.[2]

5.    Lead Plaintiffs seek redress against Defendant CIL, which is

responsible for the preparation and filing of the Offering Documents; Defendants Li

Xuemei, Kui Jiang, Wu Shiliang, Michael Askew, Su Yang, Zhang Hongfeng,

(collectively, the "Individual Defendants") who individually signed the Registration

Statements; Defendants WestPark Capital , Inc. and Rodman & Renshaw LLC

which served as underwriters of the Offerings (collectively the "Underwriters");

and MaloneBailey LLP and Kempisty & Co. (collectively the "Auditors") who

provided unqualified audit opinions on CIL's financial statements which were

contained in the Offering Documents.

6.    This action ariseS from CIL's and the Individual Defendants'

materially false statements in the Offering Documents.  The false statements were

the issuer's (CIL's) false financial statements.  These statements were false for

among others, the following reasons:

_____

[2] Therefore, where a Press Release, SEC release, or other public filing quoted in this Complaint alleges that financial statements were being false and misleading due to Defendants' fraudulent actions, Lead Plaintiffs specifically disclaim such allegations.  Lead Plaintiffs merely allege that the financial statements were false, without alleging any particular reason why they were caused to be false, or that any defendant other than CIL's CEO and CIL had actual knowledge that they were false.  Rather, the other defendants failed to make a reasonable investigation into the facts or possessed reasonable grounds to believe that the statements they made were not true.

a.  The financial statements in the Registration Statements reflect amounts for revenue and income that are contradicted by financial statements filed by CIL's operating subsidiary -- its sole source of income -- with the SAIC showing materially smaller amounts of revenue and income;

b.  Defendant MaloneBailey resigned as CIL's registered independent accountant, withdrew its audit opinion for CIL, and alleged that CIL's financial statements were materially false;

c.  CIL acknowledged defendant MaloneBailey's resignation, announced an investigation, and withdrew the Registration Statements, on grounds that the statements were materially false;

d.  NYSE Amex LLC (the exchange on which the issuer's shares were publicly traded) has stated that CIL's financial statements may have been materially false, and that CIL's reaction to the charges that its statements were false cast substantial doubt on the integrity of the financial statements; and

e.  The SEC, in an adjudicatory order, determined that CIL's financial statements were false.

## II.

## JURISDICTION AND VENUE

12.     The claims asserted herein arise under and pursuant to Sections 11, 12(a)(2) and 15 of the Securities Act, 15 U.S.C. §§77k, 77l(a)(2) and 77o.

13.     This Court has jurisdiction over the subject matter of this action pursuant to Section 22 of the Securities Act, 15 U.S.C. §77v.

14.     Venue is proper in this Judicial District pursuant to § 1391(b), and Section 22 of the Securities Act, 15 U.S.C. §77v.

15.     In connection with the acts, conduct and other wrongs alleged in this Complaint, the Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the NYSE Amex LLC.

## III.

## PARTIES

### A.     Lead Plaintiffs

16.     Lead Plaintiff Perritt Emerging Opportunities Fund ("Perritt") is a no load mutual fund.  On June 18, 2010, Perritt purchased 300,000 CIL shares from WestPark Capital Inc., pursuant to the IPO Registration Statement.  Perritt has been damaged as a result of its purchase of CIL securities as reflected in its Certificate of Plaintiff attached hereto.

17.    Lead Plaintiff Universal Invest Quality SICAV purchased 150,000 CIL

shares from Rodmand & Renshaw LLC, pursuant to which it has been damaged as

reflected in its Certificate of Plaintiff attached hereto.

18.    Lead Plaintiff Acerco SA purchased 75,000 CIL shares from Rodman

& Renshaw LLC, pursuant to which it has been damaged as reflected in its

Certificate of Plaintiff attached hereto.

19.    Lead Plaintiff Antoine de Sejournet purchased 25,000 shares from

Rodman & Renshaw LLC, pursuant to which it has been damaged as reflected in its

Certificate of Plaintiff attached hereto.

## B.    Issuer Defendant

20.    Defendant CIL is a Delaware corporation with its principal executive

offices in Guangdong Province, People's Republic of China.  CIL owns a

subsidiary that purports to manufacture LED lighting products in China.  Defendant

CIL was incorporated as a shell company, and acquired its Chinese operating

subsidiary via a reverse merger -- that is, it acquired the operating subsidiary and as

consideration for the acquisition gave to the subsidiary a controlling position in

itself.

## C.    CIL Individual Defendants

21.    Defendant Li Xuemei ("Xuemei") was CIL's Chief Executive Officer,

President, and Chairman of its Board of Directors, for the entire Class Period.

Defendant Xuemei signed the Registration Statements.

22.     Defendant Kui Jiang ("Jiang") was the Company's Chief Financial Officer and Corporate Secretary for the entire Class Period.  Jiang signed the Registration Statements.

23.     Defendant Wu Shiliang ("Shiliang") was the Company's Executive Vice President, and a Director of the Company for the entire Class Period.  Shiliang signed the Registration Statements.

24.     Defendant Michael Askew ("Askew") was a Director of the Company for the entire Class Period.  Defendant Askew resigned his position on or about March 24, 2011.  Askew signed the Registration Statements.

25.     Defendant Su Yang ("Yang") was a Director of the Company until she resigned on March 1, 2011.  Yang signed the Registration Statements.

26.     Defendant Zhang Hongfeng ("Hongfeng") was a Director of the Company for the entire Class Period.  Defendant Hongfeng signed the Registration Statements.

27.     Defendants Xuemei, Jiang, Shiliang, Askew, Yang and Hongfeng are collectively referred to herein as the "Individual CIL Defendants."

28.     Collectively, CIL and the Individual CIL Defendants are the "CIL Defendants".

**D.     <u>Underwriter Defendants</u>**

29.     Defendant WestPark Capital, Inc. ("WestPark") is an investment bank. WestPark's headquarters are located at 1900 Avenue of the Stars, Suite 310, Los

Angeles, CA 90067. WestPark was an underwriter of CIL's IPO. WestPark styles itself as an innovative investment bank. Its primary contribution to finance is a regulatory process whereby a closely-held company becomes a publicly held company traded directly on the NYSE Amex LLC or the NASDAQ through the use of a shell company. In exchange, WestPark receives substantial cash payments and a large equity stake in the resulting company. WestPark has trademarked the name for the process -- WRASP(tm). It has taken five companies through this process -- CIL, China Electric Motors, Inc, NIVS InteliMedia Technology Group, Inc., China Century Dragon Media, Inc., and ZST Digital Networks, Inc.. All five have been accused of securities fraud. All but ZST Digital Networks, Inc., have had trading in their shares halted by the exchange on which they trade, and have ultimately been removed from their exchange.

30.    WestPark advertises the WRASP process prominently on its website, a true and correct copy of which (accessed September 6, 2011) is attached as Exhibit 1. It also touts its success at completing WRASPs. A true and correct copy of WestPark's positive assertions regarding its WRASPs, available through its website, is attached as Exhibit 2. The CIL IPO has been displayed prominently on this page.

31.    Defendant Richard A. Rappaport is WestPark's founder and Chief Executive Officer. Prior to the Company's acquisition of its Chinese subsidiary, Rappaport was CIL's President and one of its directors. Rappaport was also a

substantial shareholder of CIL at the time of the underwriting, owning 1,774,435[3] shares directly and 1,472,346 through WestPark Capital Financial Services, respectively 16.8% and 14.0% of CIL's pre-Offering shares.

32.     Defendant Anthony C. Pintsopoulos is WestPark's Chief Financial Officer.  Prior to the Company's acquisition of its Chinese subsidiary, Pintsopoulos was the CIL's Chief Financial Officer and Secretary.

33.     Because WestPark's substantial financial stake in the Offering created a conflict of interest for it, FINRA ordered WestPark to obtain a second underwriter for the Offerings.

34.     Defendant Rodman & Renshaw LLC ("Rodman & Renshaw") is an investment bank.  Rodman & Renshaw maintains offices in New York, New York. Rodman was an underwriter of the Offerings.

35.     Defendant John Borer is Senior Managing Director at Rodman & Renshaw. Defendant Borer was intricately involved in the creation of the registration statements and Prospectus for CIL made effective on June 17, 2010. Among other facts demonstrating his involvement, on June 15, 2010, Defendant Borer sent a letter to the SEC, also filed as a public document, urging the SEC to accelerate the effective date of CIL's Registration Statement.

_____

[3] All share counts have been adjusted to take into account a 2 for 1 reverse stock split.

36.     Defendant Edward Rubin is Rodman & Renshaw's Chief Executive Officer and, as such, has the power to direct or cause direction of the management and policies of Rodman & Renshaw.

37.     Defendant David Horin is Rodman & Renshaw's Chief Financial Officer and, as such, has the power to direct or cause direction of the management and policies of Rodman & Renshaw.

38.     Collectively, WestPark and Rodman & Renshaw are referred to herein as the "Underwriter Defendants."

**E.     <u>Accounting Defendants</u>**

39.     Defendant MaloneBailey LLP ("MaloneBailey") was CIL's registered independent auditor for the Class Period.  MaloneBailey provided an audit opinion on CIL's financial statements for Fiscal Year ended December 31, 2009, which was incorporated into every Prospectus and Registration Statement identified in this Complaint.

40.     Defendant Kempisty & Company, P.C. ("Kempisty"), is a professional accounting corporation with offices in New York, New York.  It provided an audit opinion on the financial statements of China Intelligent BVI (the holding company that holds CIL's Chinese operating subsidiary) for Fiscal Year ended December 31, 2008, incorporated into every Prospectus and Registration Statement identified in this Complaint.

41.     MaloneBailey and Kempisky are collectively referred to as, the "Accounting Defendants."

# IV.

# CLASS ACTION ALLEGATIONS

42.     Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on their own behalf and on behalf of a Class consisting of all persons and entities who purchased or otherwise acquired CIL common stock between June 18, 2010 and March 24, 2011, inclusive (the "Class Period"), and who were damaged thereby.

43.     Excluded from the Class are the Defendants, officers and directors of CIL at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which an excluded person has or had a controlling interest.

44.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period up to July 19, 2011, CIL common stock was actively traded on the NYSE Amex LLC, an efficient market, under the symbol "CIL."  While the exact number of Class members is unknown to Lead Plaintiffs at this time and can only be ascertained through appropriate discovery, Lead Plaintiffs believe that there are thousands of members in the proposed Class who are geographically dispersed.  Members of the Class can be identified from

records maintained by CIL or its transfer agent and can be notified of the pendency of this action by mail and through the Internet, using a form of notice similar to that customarily used in securities class action lawsuits.

45.     Plaintiffs' claims are typical of the claims of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal securities laws as alleged herein.  Lead Plaintiffs, like all members of the Class, purchased and/or acquired common stock of CIL during the Class Period and have sustained damages arising out of Defendants' wrongful conduct as alleged herein.

46.     Plaintiffs will zealously prosecute the claims and will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in securities litigation and class actions.  Lead Plaintiffs do not have any interests antagonistic to or in conflict with the other members of the Class.

47.     Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members.  Among the questions of law and fact common to the Class are the following:

a.     Whether the Defendants violated the Securities Act;

b.     Whether the Registration Statements issued by Defendants to the investing public negligently omitted and/or misrepresented material facts about the business, operations, performance, and/or financial condition of

CIL;

c.    Whether the Prospectuses issued by Defendants to the investing public negligently omitted and/or misrepresented material facts about the business, operations, performance, and/or financial condition of CIL; and

d.    Whether Lead Plaintiffs and other members of the Class have sustained damages and, if so, the proper measure of such damages.

48.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all Class members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs complained of herein.  There will be no difficulty in the management of this action as a class action.

**V.**

**THE GENESIS OF CIL**

49.    CIL was incorporated in Delaware in October 11, 2007, as SRKP 22, Inc.  CIL was originally organized as a "blank check" shell company to investigate and acquire a target company or business seeking the perceived advantages of being a publicly held corporation.

50.    Korea Hyundai Light & Electric (International) Holding Limited ("Hyundai HK") was incorporated under the laws of  Hong Kong, PRC on April 27,

2005 by its original sole shareholder Mr. Li.  Hyundai HK has 2,000,000 common shares authorized with HKD 1 par value each and 2,000,000 shares are issued and outstanding.  On July 17, 2008, Mr. Li transferred 100% ownership in Hyundai HK to CIL.  Hyundai HK became a subsidiary of CIL thereafter.

51.    Hyundai Light & Electric (HZ) Co., Ltd. ("Hyundai HZ") is located at Huizhou, Guangdong Province, PRC and was incorporated under Chinese law on July 6, 2005.  Hyundai HZ had an initial registered capital of HKD 2 million, and it was increased to HKD 20 million in 2008.  Prior to July 17, 2008, Hyundai HZ was the wholly owned subsidiary of Hyundai HK.  Mr. Li was the sole shareholder and director of Hyundai HK and was also the director of Hyundai HZ.  On July 17, 2008, pursuant to an ownership transfer agreement, CIL acquired 100% interests in Hyundai HZ from Hyundai HK. Hyundai HZ became a subsidiary of CIL thereafter.

52.    On October 20, 2009, CIL entered into a share exchange agreement with China Intelligent Electric Holding Ltd. BVI ("China Intelligent BVI") and the sole shareholder of China Intelligent BVI.  Pursuant to the share exchange agreement, as amended by Amendment No. 1 dated November 25, 2009 and Amendment No. 2 dated January 15, 2010 (collectively, the "Exchange Agreement"), CIL agreed to issue an aggregate of 7,097,748 shares of its common stock in exchange for all of the issued and outstanding share capital of China Intelligent BVI (the "Share Exchange") and the shares referred to as "Share

Exchange shares." On January 15, 2010, the Share Exchange closed and China Intelligent BVI became CIL's wholly-owned subsidiary and CIL immediately changed its name from "SRKP 22, Inc." to "China Intelligent Lighting and Electronics, Inc." CIL issued a total of 7,097,748 shares to Defendant Li Xuemei, the sole shareholder of China Intelligent BVI, and her designees in exchange for all of the issued and outstanding capital stock of China Intelligent BVI. The share exchange closed on January 25, 2010.

53. The following chart illustrates CIL's corporate structure at the time of closing (and throughout the Class Period):



54. Prior to the closing of the Share Exchange and the Private Placement, described below, CIL stockholders cancelled an aggregate of 2,130,195 shares such that there were 1,418,001 shares of common stock outstanding immediately prior to

the Share Exchange.  CIL stockholders also canceled an aggregate of 2,757,838 warrants to purchase shares of common stock held by them such that they held an aggregate of 790,358 warrants immediately prior to the Share Exchange.  Each warrant was entitled to purchase one share of CIL common stock at $0.0002.

55.    On January 15, 2010, concurrently with the close of the Share Exchange described above, CIL closed a private placement of shares of common stock (the "Private Placement").  CIL stated that the net proceeds from the Private Placement were to be used for working capital.  Pursuant to subscription agreements entered into with the investors, CIL sold an aggregate of 1,377,955 shares of common stock at $2.54 per share, for gross proceeds of approximately $3.5 million.  CIL paid WestPark a placement agent commission equal to 8% of the gross proceeds from the financing and a 4% non-accountable expense allowance.  CIL also agreed to retain WestPark for a period of six months following the closing of the Private Placement to provide it with financial consulting services, for which CIL agreed to pay WestPark $6,000 per month.

56.    CIL agreed to file a registration statement covering the common stock sold in the private placement within 30 days of the closing of the Private Placement pursuant to the subscription agreement entered into with each investor and to cause such registration statement to be declared effective by the SEC no later than 150 days from the date of filing or 180 days from the date of filing if the registration

statement was subject to a full review by the SEC.  CIL filed the registration statement on February 16, 2010.

## VI.

## CIL PUBLIC OFFERINGS AND SALE OF COMMON STOCK

57.     On or about June 17, 2010, the SEC declared effective a Registration Statement (No. 333-164925) for two sets of CIL shares.  This had the effect of making these shares eligible for public resale.[4]

(a)     First, CIL registered and sold 3,350,000 newly issued shares, through an offering underwritten by WestPark and Rodman & Renshaw, with proceeds going to CIL.  This IPO was made pursuant to the IPO Registration Statement.

(b)     Second, CIL registered the Private Placement Shares for resale, with proceeds going to the resellers.  The resale of the Private Placement shares was made pursuant to the Initial Resale Prospectus filed with the SEC on July 27, 2010.  The Initial Resale Prospectus stated that these reselling stockholders did not have a material relationship with CIL other than as a shareholder at any time within the past three years ("Initial Reselling Stockholders").

---

[4] On June 15, 2010, Rodman & Renshaw and Westpark sent a letter to the SEC urging it to accelerate the effective date of CIL's Registration Statement

The June 17, 2010 Registrion Statement was signed by each of the Individual CIL Defendants and included financial statements audited by MaloneBailey and Kempisky.  These two related Prospectuses also included financial statements audited by MaloneBailey and Kempisky.  At the conclusion of the IPO and the Initial Resale there was a public market of 4,727,955 of CIL common shares.

58.     On December 15, 2010, the SEC declared effective a Registration Statement (No. 333-170943) for the Secondary Resale.  The reselling stockholders included, among otheres, Defendants Westpark (1,122,327 shares), Rappaport (193,333), Pintsopoulos (120,833 shares), and two of Rappaport's family trusts (108,750) of which he is trustee (collectively the "Secondary Reselling Stockholders").  The Secondary Reselling Stockholders sold their shares pursuant to a Prospectus filed with the SEC on December 16, 2010.  The Registration Statements were signed by each of the Individual CIL Defendants.  MaloneBailey gave its consent to incorporate its audit of the Company's financial statements as of December 31, 2009.  Kempisty gave its consent to incorporate its audit of China Intelligent BVI's financial statements as of December 31, 2008.  The Prospectus also included these financial statements audited by MaloneBailey and Kempisky.  At the conclusion of the IPO and the Initial Resale there was a public market of 6,586,278, common shares of CIL.

59.     Other than the shares registered pursuant to the Registration Statements declared effective by the SEC on June 17, 2010 and December 15,

2010, there were no other shares registered for resale before the end of the Class Period. Sepcifically,

a. The Share Exchange CIL shares (7,097,748) were subject to a lock-up agreement that prevented their resale, pledge, transfer, or disposal until December 2012.

b. A block of 649,989 shares held by WestPark after the Secondary Resale were subject to lock-up until 12 months after CIL first began trading on the NYSE Amex LLC, *i.e.* June 2011.

c. A block of 25,000 shares underlying options for Defendant Jiang were registered for resale, but Defendant Jiang never exercised the options.

60.    The following chart shows the aftermarket for CIL's shares:

|  | Exchange | IPO | Primary Resale | Secondary Resale |
|---|---|---|---|---|
| **Sold Pursuant to Prospectus** | No | Yes | Yes | Yes |
| **Date Entered Aftermarket** | Never | 06/17/10 | 06/17/10 | 12/15/10 |
| **Underwriter** | No | Yes | No | No |

61.    Pursuant to the foregoing, anyone who purchased shares in the aftermarket purchased shares that were originally registered pursuant to one of the two Registration Statements above. As a result, all persons and entities who purchased shares in the aftermarket can trace their shares to one of the two Registration Statements and three Prospectuses.

# VII.

## FALSE STATEMENTS IN THE
## REGISTRATION STATEMENTS AND PROSPECTUSES

62.     The (1) IPO Registration Statement, (2) Initial Resale Prospectus, and (3) the Secondary Resale Registration Statement, each included CIL financial statements for the Fiscal Years ended December 31, 2008 and 2009.  Kempisty provided an audit opinion on the CIL financial statements for the Fiscal Year Ended December 31, 2008.  MaloneBailey provided and audit opinion on the CIL financial statements for the Fiscal Year Ended December 31, 2009.

63.     Certain financial results for the Fiscal Years ended December 31, 2008 and 2009 contained in CIL's SEC filings are as follows:

| In USD | Year Ended December 31, 2009 | Year Ended December 31, 2008 |
|---|---|---|
| Revenue | 59,261297 | 42,943,934 |
| Gross Profit | 13,572,807 | 9,990,118 |
| Net income | 7,579,820 | 5,767,806 |
| Total assets | 24,157,931 | 13,906,261 |
| Shareholder equity | 17,894,643 | 10,265,170 |

64.    The sole source of income for the Fiscal Years 2009 and 2010 for CIL and the companies it would acquire via reverse merger was the Chinese operating subsidiary Hyundai Light and Electric (HZ) Co., Ltd ("Hyundai").[5]

65.    Hyundai was required to file annual financial statements with SAIC. Because Hyundai was classified as a Wholly Foreign Owned Enterprise, its SAIC Filings must be audited.[6]  In addition, businesses that file false SAIC filings face a variety of penalties, including fines and revocation of the entity's business license.[7] If an entity's business license is revoked, the People's Bank of China[8] requires that the bank account of that entity be closed.[9]  Without a business license, the entity cannot legally conduct business in the PRC.

66.    Therefore, Hyundai was highly incentivized to report accurate financials.  However, CIL's financials reported to the SCAIC are materially different than those reported to the SEC.

---

[5] Although CIL also acquired Korea Hyundai Light & Electric (Intl) Holding Ltd. ("Korea Holding"), Korea Holding was a holding company that had no assets except Hyundai prior to the reorganization.  Therefore, when Hyundai's ownership was transferred to China Intelligent, Korea Holding had no assets.  Therefore, the sole relevant figures are those of Hyundai's.

[6] *See, e.g.*, KPMG, Expanding your horizons?  A guide to setting up business across the Asia Pacific Region, at 15 *available at* http://www.kpmg.de/docs/Expanding_your_horizons_China.pdf at 5.

[7] "Measures for the Annual Inspection of Enterprises" issued in February 24, 2006, Article 20.

[8] People's Bank of China is equivalent to the Federal Reserve in the U.S.

[9] "Measures for the Administration of RMB Bank Settlement Accounts" issued in April 2003 (No.5 [2003]), Article 49.

| In USD[10] | Year ended December 31, 2009 | Year ended December 31, 2008 |
|---|---|---|
| Revenue | 13,472,665.04 | 14,776,975.35 |
| Gross profit | 27,288.71 | 1,301,777.37 |
| Net income (loss) | (776,310.35) | 1,067,858.67 |
| Total assets | 12,030,102.00 | 10,110,589.34 |
| Shareholders' equity | 3,233,576 | 3,957,735 |

67.    This chart compares the fiscal year-end 2008 and 2009 results filed with the SEC and SAIC:

| In USD | 2009 SEC | 2009 SAIC | 2008 SEC | 2008 SAIC |
|---|---|---|---|---|
| Revenue | 59,261,297 | 13,472,665.04 | 42,943,934 | 14,776,975.35 |
| Gross Profit | 13,572,807 | 27,288.71 | 9,990,118 | 1,301,777.37 |
| Net income (loss) | 7,579,820 | (776,310.35) | 5,767,806 | 1,067,858.67 |
| Total assets | 24,157,931 | 12,030,102.00 | 13,906,261 | 10,110,589.34 |
| Shareholders' equity | 17,894,643 | 3,233,576 | 10,265,170 | 3,957,735 |

---

[10] Assumes an exchange rate of 6.92 for the year ended December 31, 2008, and an exchange rate of 6.83 for the year ended December 31, 2009.

The discrepancy between the financials reported to the SAIC and the SEC are too material to be explained by differences in accounting rules.  Thus, instead of buying shares in a thriving company with revenues of nearly $60 million and shareholders' equity of $17 million, shareholders were purchasing shares in a struggling company with revenues of only $13.5 million, substantial net losses, and shareholders' equity of $3,233,576.  In sum, investors spent approximately $10 million to acquire an asset valued at $3,233,576.  In reality, the shares in the Purblic Offerings were only 24.5% of CIL's issued and outstanding shares.  Therefore, the purchasers were collectively spending $10 million to acquire an asset with a true value of approximately $784,000.

68.    CIL never issued any further audited financial statements than those.  In particular, it never issued an annual report on Form 10-K for the period ending December 31, 2010.

## VIII.

## THE TRUTH IS REVEALED

69.    On March 29, 2011 the Company issued a press release announcing (a) the resignation/termination of MaloneBailey; (b) MaloneBailey's determination that the Company's financial statements should no longer be relied upon as they contained material errors; (c) a formal SEC investigation of the Company; and (d) a director's departure from the Company.  The announcement states in relevant part (emphases added):

China Intelligent Lighting and Electronics, Inc. (NYSE Amex: CIL) (the "Company"), today announced that the Company's engagement with its registered independent accounting firm, MaloneBailey LLP ("MaloneBailey"), has been formally terminated. On March 23, 2011, the Company provided notice of termination to MaloneBailey as the Company's auditor, effective immediately.  On March 24, 2011, the Company received a notice of resignation from MaloneBailey ("Resignation Letter") indicating that MaloneBailey is terminating its engagement with the Company, effective immediately. The Company has begun to seek to retain a new auditor.

The Resignation Letter described MaloneBailey's resignation being due to accounting fraud involving forging of the Company's accounting records and forging bank statements, in addition to other discrepancies identified in the Company's accounts receivable.  The Resignation Letter indicated that **MaloneBailey believed that the accounting records of the Company have been falsified, which constitutes an illegal act.  Furthermore, MaloneBailey's letter notes that the discrepancies could indicate a material error in previously issued financial statements.  As a result, MaloneBailey stated that it is unable to rely on management's representations as**

**they relate to previously issued financial statements and it can no longer support its opinion related to the Company's financial statements for the year ended and as of December 31, 2009**.

On March 24, 2011, Michael Askew resigned as a member of the Board of Directors of the Company, effective immediately, including his position as the Chairman of the Company's Audit Committee.  Mr. Askew submitted his resignation to the Board via email on March 24, 2011, approximately the twelve month anniversary of appointment, indicating that his resignation was due to, among other things, the circumstances relevant to his limited ability to provide assistance and advice to the Company in the present situation, including but not limited to the Board not seeking Mr. Askew's input or professional services during his term on the Board.

On March 24, 2011, the Company received a preliminary information request from Amex requesting additional information. The Company intends to fully cooperate with NYSE Amex regarding this matter.

The Company was also recently notified by the staff of the U.S. Securities and Exchange Commission ("SEC") that it has initiated a

formal, nonpublic investigation into whether the Company had made material misstatements or omissions concerning its financial statements, including cash accounts and accounts receivable. The SEC has informed the Company that the investigation should not be construed as an indication that any violations of law have occurred. On March 24, 2011, the SEC served the Company a subpoena for documents relating to the matters under review by the SEC. The Company is committed to cooperating with the SEC. It is not possible at this time to predict the outcome of the SEC investigation, including whether or when any proceedings might be initiated, when these matters may be resolved or what, if any, penalties or other remedies may be imposed.

In light of these events, the Board of Directors of the Company has formed a Special Investigation Committee consisting of independent members of the Board of Directors to launch an investigation with respect to the concerns of MaloneBailey. The Committee is authorized to retain experts and advisers, including a forensic accounting firm and independent legal advisors, in connection with its investigation. The Company does not intend to provide further

comment regarding the allegations until after the conclusion of the Special Committee's investigation.

70.    Later that day the Company filed a Current Report on Form 8-K with the SEC providing further details about the information contained in the press release above.  The 8-K revealed that in addition to the fiscal year ended 2009 financial statements, the Company's financial statements for the first three quarters of 2010 should no longer be relied upon as they contained material errors.

71.    On April 5, 2011, the NYSE Amex LLC provided the Company with notification that it would seek to delist the Company's shares from the NYSE Amex.  On April 7, 2011, the Company filed a Current Report on Form 8-K reporting on the notification.  It states, in relevant part:

> [...] Specifically, MaloneBailey raised concerns to the Company's board of directors and management **that its accounting records may have been falsified, constituting an illegal act**. The Company failed to adequately address the concerns raised by MaloneBailey, thereby leading to MaloneBailey's resignation as the Company's independent auditor and the withdrawal of MaloneBailey's audit opinions, as well as a presumption that the concerns raised are true.  Moreover, the SEC (in declaring the Company's registration statement to be effective), the Exchange (in approving the Company for listing) and market participants (in making investment and

trading decisions) reasonably relied on the audit opinions in determining that the Company's financial statements subject to such opinions were accurate, complete and in accordance with generally accepted accounting principles and standards. **Thus the Company's actions and inactions which led to MaloneBailey's resignation and withdrawal of its audit opinions have cast material doubt on the integrity of its financial statements as reasonably relied on for such purposes.**

The Company is noncompliant with Section 132(e) of the Company Guide, which provides that a listed company is subject to delisting if any communication (including but not limited to a communication made in connection with an initial listing application) contains a material misstatement or omits material information necessary to make the communication to the Exchange not misleading. In this regard, the Exchange relied on the Company's registration statement filed with the SEC on June 16, 2011, and the fact that the financial statements contained therein were audited by MaloneBailey, in determining that the Company qualified for initial listing on the Exchange. **As a consequence of the withdrawal of MaloneBailey's opinions, the integrity of the financial statements on which the Exchange relied in making its initial listing determination has**

**been called into question, raising a concern as to whether the Company was at that time qualified for listing, as well as the effectiveness of its registration under Section 12(b) of the Exchange Act.** The fact that MaloneBailey withdrew its audit opinions included in the registration statement, and that its opinions may not now be relied upon constitutes a material misstatement and a violation of Section 132(e) of the Company Guide. **In this regard, the Company's failure to adequately address the matters raised by MaloneBailey to avoid its resignation and withdrawal of its audit opinions raises concerns that the Company's financial statements (which constitute communications provided in connection with its initial listing application and which have been relied on by the Exchange in connection with its ongoing assessment of the Company's continued listing eligibility) contain one or more material misstatements and/or omit material necessary to make the financial statements not misleading.** (emphases added)

72.    On April 12, 2011, the Company issued a Current Report on Form 8-K/A further commenting on MaloneBailey's charges of accounting fraud. The Company stated, in relevant part:

On March 24, 2011, the Company received a notice of resignation from MaloneBailey ("Resignation Letter") indicating that it is terminating its engagement with the Company, effective

immediately.  MaloneBailey informed the Company that the resignation was due to, as described in the Resignation Letter, accounting fraud involving forging of the Company's accounting records and forging bank statements, in addition to other discrepancies identified during its testing of the Company's accounts receivable. The Resignation Letter indicated that MaloneBailey believed that the accounting records of the Company have been falsified, which constitutes an illegal act.  MaloneBailey indicated that it has discussed the issues with management but with no resolution or reasonable explanation.

**Furthermore, the Resignation Letter indicates that such accounting fraud could indicate a material error in previously issued financial statements.  As a result, MaloneBailey indicated in the Resignation Letter that it is unable to rely on management's representations as they relate to previously issued financial statements and it can no longer support its opinions related to the financial statements as of December 31, 2009 and condensed Parent Only financial statements, included in the Registration Statement on Form S-1 filed with the Securities and Exchange Commission (the "SEC") on April 21, 2010.**

73.     On June 10, 2011, the Company filed a Post-Effective Amendment to its Registration Statements previously filed on December 15, 2010 and June 16, 2010.  The sole purpose of the amendments was "to deregister all of the securities previously registered under the Registration Statement that remain unsold and to terminate the effectiveness of the Registration Statements."

74.     On July 19, 2011, the SEC suspended the effectiveness of the Registration Statements.

## IX.

## ACCOUNTING DEFENDANTS' NEGLIGENCE

75.     The Accounting Defendants each certified that "we have conducted our audit in accordance with standards of the Public Company Accounting Oversight Board (United States).  Those standards require that we plan and perform the audit to obtain reasonable assurances about whether the financial statements are free of material misstatements [...]  We believe that our audit provides a reasonable basis for our opinion.  [Paragraph break].  In our opinion, the consolidated financial statements referred to above present fairly, in all material respects, the financial position of China Intelligent Lighting and Electronics."

76.     The Accounting Defendants each consented to have their audit opinions used in all of the Registration Statements.

77.     Generally Accepted Auditing Standards ("GAAS") requires that the auditor understand the client's industry and business, and be knowledgeable about

matters that relate to the nature of the entity's business, its organization, and operating characteristics.  AU 310.07.

78.     For financial statements audited prior to December 15, 2010 "GAAS requires that sufficient competent evidential matter is to be obtained through inspection, observation, inquiries, and confirmations to afford a reasonable basis for an opinion regarding the financial statements under audit."  AU 150.02.3.

79.     Auditing Standard No. 15 ¶10 provides that "[w]hen using information produced by the company as audit evidence, the auditor should [...] [t]est the accuracy and completeness of the information."

80.     Auditing Standard No. 15 ¶22 requires auditors to "design[] substantive tests of details and tests of controls [to] determine the means of selecting items for testing from among the items included in an account or the occurrences of a control."

81.     Upon information and belief, none of the Accounting Defendants obtained sufficient evidential matter to support their audit opinion regarding the financial statements.  Since CIL only had one tenth the revenue it claimed in its SEC filings, a competent audit would have uncovered evidence that sales CIL claimed happened in fact never took place.

82.     Auditing Standard No. 12 ¶9 requires the auditor to "obtain an understanding of relevant industry, regulatory, and other external factors [...] including the legal and political environment."  Auditing Standard No. 12 ¶11

provides that "the auditor should consider [...] [r]eading public information about the company relevant to the likelihood of material financial statement misstatements".

83.    Auditing Standard No. 15 ¶29 provides that "[i]f audit evidence obtained from one source is inconsistent with that obtained from another, or if the auditor has doubts about the reliability of information to be used as audit evidence, the auditor should perform the audit procedures necessary to resolve the matter."

84.    Upon information and belief, the Accounting Defendants did not consult and were therefore negligent in not consulting CIL's subsidiary's publicly available, audited financial statements filed with the SAIC.

85.    If the Accounting Defendants did consult CIL's subsidiary's publicly available audited financial statements filed with the SAIC, they were negligent in failing to note the discrepancies between SAIC and SEC filings.  For key statistics, ranging from net assets to gross profits, SAIC reported numbers were anywhere from half to one thousandth of those reported in SEC filings.  For net income, SAIC filings in 2009 indicate a loss of $776,310.35, while SEC filings indicated profits of $7,579,820.  Any non-negligent auditor would have been alerted by these glaring discrepancies.

86.    Auditing Standard No. 12 ¶65 provides that "the auditor should evaluate whether the information gathered from the risk assessment procedures indicates that one or more fraud risk factors are present and should be taken into

account [...] Fraud risk includes (1) an incentive or pressure to perpetrate fraud, (2) an opportunity to carry out the fraud."

87.    AU §316.85A.2, which is entitled "Risk Factors Relating to Misstatements Arising From Fraudulent Financial Reporting" specifically provides that auditors should consider fraud risk where "[s]ignificant operations [are] located or conducted across international borders in jurisdictions where differing business environments and cultures exist."

88.    The Accounting Defendants failed to consider, among other things, that the Defendants, based in the People's Republic of China, were effectively beyond the reach of the SEC and United Stated Department of Justice's ("DOJ") enforcement of the securities laws, and could therefore violate the securities laws without fear of civil or criminal enforcement from the SEC or DOJ, respectively.

89.    Upon information and belief, the Accounting Defendants never conducted the audit work necessary to resolve the discrepancy between CIL's SAIC filings and its SEC filings, or the discrepancy that would have arisen had the auditors consulted with a significant proportion of CIL's customers.

## X.

## PROOF OR RELIANCE IS UNNECESSARY

90.    There is no need for Lead Plaintiffs or the Class to prove reliance.  Section 11(a) of the Securities Act, 15 U.S.C. §77k(a) specifically provides that plaintiffs need not show reliance "if the issuer has not made available an earnings statement covering a

period of at least twelve months beginning after the effective date of the registration

statement." 15 U.S.C. §77k(a). In this case, this would be CIL's Annual Report for the

year ending December 31, 2010, on Form 10-K. This annual report was never released.

Therefore, proof of reliance is unnecessary.

91.     Reliance is not an element of a claim arising under Section 12 of the

Securities Act, 15 U.S.C. § 77l. Therefore, Plaintiffs need not prove reliance as to their

Section 12 claims.

## XI.

## **NO SAFE HARBOR**

92.     The statutory safe harbor provided for forward-looking statements

under certain circumstances does not apply to any of the allegedly false statements

pleaded in this Complaint. The specific statements alleged herein to be false and

misleading were not identified as "forward-looking statements" when made. To the

extent there were any forward-looking statements, there were no meaningful

cautionary statements identifying important facts that could cause actual results to

differ materially from those in the purportedly forward-looking statements.

93.     Alternatively, to the extent that the statutory safe harbor does apply to

any forward-looking statements pleaded herein, Defendants are liable for those

false forward-looking statements because at the time each of those forward-looking

statements was made, the particular speaker knew that the particular forward-

looking statement was false, and/or the forward-looking statement was authorized

and/or approved by an executive officer of the Company who knew that those statements were false when made.

## FIRST CLAIM

### Violation of Section 11 of the Securities Act
### Against all Defendants Except Rappaport and Pintsopoulos

94.     Lead Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.  This claim is not based on fraud, does not allege fraud, and does not sound in fraud.

95.     This claim is asserted by Lead Plaintiffs against all Defendants except Rappaport and Pintsopoulos, by, and on behalf of persons who acquired shares of the Company's securities pursuant to and/or traceable to the IPO Registration Statement.

96.     The CIL Defendants signed the IPO Registration Statement.  The Underwriter Defendants were underwriters of the IPO within the meaning of Section 11 of the Securities Act, 15 U.S.C. § 77k(a)(5).  The Accounting Defendants provided audit opinions regarding CIL's financial statements in the IPO Prospectus.

97.     The CIL Defendants, as signatories of the Registration Statement, as directors and/or officers of CIL and controlling persons of the issuer, owed to the purchasers of the securities obtained through the IPO Registration Statement the duty to make a reasonable and diligent investigation of the statements contained in

the IPO Registration Statement at the time it became effective to ensure that such statements were true and correct, and that there was no omission of material facts required to be stated in order to make the statements contained therein not misleading. Defendants knew, or in the exercise of reasonable care should have known, of the material misstatements and omissions contained in or omitted from the Registration Statement as set forth herein.  As such, Defendants are liable to the Class.

98.     The Underwriter Defendants owed to the purchasers of the securities obtained through the Registration Statement the duty to make a reasonable and diligent investigation of the statements contained in the Registration Statement at the time they became effective to ensure that such statements were true and correct and that there was no omission of material facts required to be stated in order to make the statements contained therein not misleading.

99.     The Accounting Defendants owed Plaintiff a duty to make a reasonable and diligent investigation of the statements contained in the Registration Statement at the time they became effective to ensure that such statements were true and correct and that there was no omission of material facts required to be stated in order to make the statements contained therein not misleading.

100.   None of the Defendants made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration

Statement were true or that there was no omission of material facts necessary to make the statements made therein not misleading.

101.   Defendants issued and disseminated, caused to be issued and disseminated, and participated in the issuance and dissemination of, material misstatements to the investing public, which were contained in the Registration Statement, that misrepresented or failed to disclose, *inter alia*, the facts set forth above. By reason of the conduct herein alleged, each such defendant named in this claim violated and/or controlled a person who violated Section 11 of the Securities Act.

102.   As a direct and proximate result of Defendants' acts and omissions in violation of the Securities Act, the market price of CIL's securities sold in the Offering was artificially inflated, and Lead Plaintiff and the Class suffered substantial damage in connection with their purchase of CIL's securities pursuant to the Registration Statement.

103.   CIL is the issuer of the securities sold via the Registration Statement. As issuer of the securities, the Company is strictly liable to Lead Plaintiffs and the Class for the material misstatements and omissions therein.

104.   At the times they obtained their shares of CIL, Lead Plaintiffs and members of the Class did so without knowledge of the facts concerning the misstatements or omissions alleged herein.

105.   This action is brought within one year after discovery of the untrue statements and omissions in the Registration Statement which should have been made through the exercise of reasonable diligence, and within three years of the effective date of the Registration Statement.

106.   No earnings statement covering a period of at least twelve months beginning after the effective date of the Registration Statements was ever issued.

107.   By virtue of the foregoing, Lead Plaintiffs and the other members of the Class are entitled to damages under Section 11 as measured by the provisions of Section 11(e), from the defendants and each of them, jointly and severally.

## SECOND CLAIM

### Violation of Section 11 of the Securities Act
### Against MaloneBailey LLP, Kempisky & Co., P.C.,
### Kui Jiang, Li Xuemei, Wu Shiliang,
### Michael Askew, Su Yang, and Zhang Hongfeng

108.   Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

109.   This claim is asserted by Lead Plaintiffs on behalf of themselves and the members of the Class against all Defendants by, and on behalf of persons who acquired shares of the Company's securities pursuant to and/or traceable to any of the Registration Statements.  Because all shares in the Aftermarket were registered pursuant to one or the other of the Registration Statements, this claim is asserted by all the Aftermarket Plaintiffs.

110.   CIL Defendants as signatories of the Registration Statement, as directors and/or officers of CIL and controlling persons of the issuer, owed to the purchasers of the securities obtained through the Registration Statement the duty to make a reasonable and diligent investigation of the statements contained in the Registration Statement at the time they became effective to ensure that such statements were true and correct, and that there was no omission of material facts required to be stated in order to make the statements contained therein not misleading. Defendants knew, or in the exercise of reasonable care should have known, of the material misstatements and omissions contained in or omitted from the Registration Statement as set forth herein. As such, Defendants are liable to the Class.

111.   Accounting Defendants owed Plaintiff a duty to make a reasonable and diligent investigation of the statements contained in the Registration Statements at the time they became effective to ensure that such statements were true and correct and that there was no omission of material facts required to be stated in order to make the statements contained therein not misleading.

112.   The Defendants' participation does not vary across Registration Statements.  Each Defendant therefore breached his, her, or its duties to the Aftermarket Plaintiffs in the same way in each of the Registration Statements.

113.   None of the Defendants made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration

Statements were true or that there was no omission of material facts necessary to make the statements made therein not misleading.

114.   Defendants issued and disseminated, caused to be issued and disseminated, and participated in the issuance and dissemination of, material misstatements to the investing public, which were contained in the Registration Statements, that misrepresented or failed to disclose, *inter alia*, the facts set forth above. By reason of the conduct herein alleged, each defendant violated and/or controlled a person who violated Section 11 of the Securities Act.

115.   As a direct and proximate result of Defendants' acts and omissions in violation of the Securities Act, the market price of CIL's securities sold pursuant to the Registration Statements was artificially inflated, and Lead Plaintiffs and the Class suffered substantial damage in connection with their ownership of CIL's securities pursuant to the Registration Statements.

116.   CIL is the issuer of the securities sold via the Registration Statements. As issuer of the securities, the Company is strictly liable to Lead Plaintiffs and the Class for the material misstatements and omissions therein.

117.   At the times they obtained his shares of CIL, Lead Plaintiffs and members of the Class did so without knowledge of the facts concerning the misstatements or omissions alleged herein.

118.   This action is brought within one year after discovery of the untrue statements and omissions in and from the Registration Statements which should

have been made through the exercise of reasonable diligence, and within three years of the effective date of the Prospectus.

119.    No earning statement covering a period of at least twelve months beginning after the effective date of the Registration Statements was ever issued.

120.    By virtue of the foregoing, Plaintiff and the other members of the Class are entitled to damages under Section 11 as measured by the provisions of Section 11 (e), from the defendants and each of them, jointly and severally.

## THIRD CLAIM

### Violations of Section 15 of the Securities Act
### Against the Individual Defendants

109.    Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.  This claim is not based on, and does not allege, fraud.

110.    This claim is asserted on behalf of the IPO Registration Statement Plaintiffs against each of the Individual Defendants, each of whom was a control person of CIL or a primary violator during the period at issue.

111.    For the reasons set forth above, CIL is liable to Lead Plaintiffs and the members of the Class who purchased CIL common stock in the IPO Offering pursuant to the untrue statements and omissions of material fact contained in the Registration Statement and Prospectus, under §§11 and 12(a)(2) of the Securities

Act.  WestPark and Rodman and Renshaw are also liable to the IPO Plaintiffs.

MaloneBailey and Kempisky are also liable to the IPO Plaintiffs.

112.    The Individual Defendants were control persons of CIL, WestPark, Rodman & Renshaw, MaloneBailey, or Kempisky by virtue of, among other things, their positions as senior officers, directors and/or controlling shareholders of their respective primary violator.  Each was in a position to control and did in fact control their respective primary violator and the false and misleading statements and omissions contained in the Registration Statement and Prospectus.

113.    None of the Individual Defendants made reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement and Prospectus were accurate and complete in all material respects.  Had they exercised reasonable care, they could have known of the material misstatements and omissions alleged herein.

114.    This claim was brought within one year after the discovery of the untrue statements and omissions in the IPO Registration Statement and Prospectus and within three years after CIL common stock was sold to the Class in connection with the public offering.

115.    No earning statement covering a period of at least twelve months beginning after the effective date of the Registration Statements was ever issued.

116.    By reason of the misconduct alleged herein, for which CIL, MaloneBailey, Kempisky, Rodman & Renshaw, and WestPark are primarily liable,

as set forth above, the Individual Defendants are jointly and severally liable with and to the same extent as CIL, MaloneBailey, Kempisky, Rodman & Renshaw, and WestPark pursuant to Section 15 of the Securities Act.

## FOURTH CLAIM

### Violations of Section 15 of the Securities Act
### Against Kui Jiang, Li Xuemei, Wu Shiliang,
### Michael Askew, Su Yang, and Zhang Hongfeng

117.    Lead Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.  This claim is not based on, and does not allege, fraud.

118.    This claim is asserted on behalf of the Aftermarket Plaintiffs against each of the Individual Defendants, each of whom was a control person of CIL or a primary violator during the period at issue.

119.    For the reasons set forth above, CIL is liable to Lead Plaintiffs and the members of the Class who purchased CIL common stock in the Offering on the untrue statements and omissions of material fact contained in the Registration Statement and Prospectus, under §§11 and 12(a)(2) of the Securities Act.  .  MaloneBailey and Kempisky & Co are also liable to the Aftermarket Plaintiffs.

120.    The Individual Defendants were control persons of CIL, MaloneBailey, or Kempisky & Co. by virtue of, among other things, their positions as senior officers, directors and/or controlling shareholders of their respective primary violator.  Each was in a position to control and did in fact control their

respective primary violator and the false and misleading statements and omissions contained in the Registration Statement and Prospectus.

121.   None of the Individual Defendants made reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement and Prospectus were accurate and complete in all material respects.  Had they exercised reasonable care, they could have known of the material misstatements and omissions alleged herein.

122.   This claim was brought within one year after the discovery of the untrue statements and omissions in the Registration Statement and Prospectus and within three years after CIL common stock was sold to the Class in connection with the public offering.

123.   No earning statement covering a period of at least twelve months beginning after the effective date of the Registration Statements was ever issued. Therefore, Plaintiffs need not prove reliance.

124.   By reason of the misconduct alleged herein, for which CIL, MaloneBailey, and Kempisky & Co., are primarily liable, as set forth above, the Individual Defendants are jointly and severally liable with and to the same extent as CIL, MaloneBailey, and Kempisky & Co. pursuant to Section 15 of the Securities Act.

# FIFTH CLAIM

## Violation of §12(a)(2) of the Securities Act
## Against All Defendants Other than the
## Accounting Defendants, Borer, Rubin, and Horin

117.   Lead Plaintiffs repeats and realleges each and every allegation contained above as if fully set forth herein. This claim is not based on, and does not allege, fraud.

118.   This claim is brought on behalf of the Lead Plaintiffs and the members of the Class pursuant to Section 12(a)(2) of the Securities Act against all Defendants other than the Accounting Defendants.

119.   Defendants were sellers, offerors, underwriters and/or solicitors of sales of the CIL securities offering pursuant to the June 2010 Prospectus.

120.   Defendants actively solicited the Plaintiffs' purchases of CIL shares.

121.   The Prospectus contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and concealed and failed to disclose material facts. Defendants' actions of solicitation included participating in the preparation of the false and misleading Prospectus.

122.   Defendants owed to the purchasers of CIL securities which were sold in the Offering pursuant to the Prospectus, the duty to make a reasonable and diligent investigation of the statements contained in the Prospectus, to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not

misleading. These Defendants knew of, or in the exercise of reasonable care should have known of, the misstatements and omissions contained in the Offering materials as set forth above.

123.   Lead Plaintiffs and the members of the Class purchased or otherwise acquired CIL securities pursuant to and traceable to the defective Prospectus. Plaintiffs did not know, or in the exercise of reasonable diligence could not have known of the untruths and omissions.

124.   Lead Plaintiffs, individually and representatively, hereby offer to tender to Defendants those securities acquired pursuant to the defective Prospectus which Lead Plaintiffs and the members of the class continue to own, on behalf of all members of the Class who continue to own such securities, in return for the considerations paid for those securities together with interest thereon.

125.   By reason of the conduct alleges herein, the Defendants named in this Claim violated, and/or controlled a person who violated, section 12(a)(2) of the Securities Act. Accordingly, Lead Plaintiffs and members of the Class who hold CIL securities purchased pursuant and/or traceable to the Prospectus have the right to rescind and recover the consideration paid for their CIL securities and, hereby elect to rescind and tender their CIL securities to· the Defendants sued herein. Lead Plaintiffs and Class members who have sold their CIL securities are entitled to rescissory damages.

126.   Less than three years have elapsed from the time that the securities upon which this claim is brought were offered and sold to the public.  Less than one year has elapsed from the time when Lead Plaintiffs discovered or reasonably could have discovered the facts upon which this Claim is based.

**WHEREFORE**, Lead Plaintiffs pray for relief and judgment, as follows:

(a)  Determining that this action is a proper class action, certifying Lead Plaintiffs as class representatives under Rule 23 of the Federal Rules of Civil Procedure and Lead Plaintiffs' counsel as Lead Counsel;

(b)  Awarding compensatory damages in favor of Lead Plaintiffs and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)  Awarding Lead Plaintiffs and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

(d)  Awarding rescissory damages; and

(e)  Awarding such other and further relief as the Court may deem just and proper.

## <u>JURY TRIAL DEMANDED</u>

Lead Plaintiffs hereby demand a trial by jury.

Dated: September 6, 2011         Respectfully submitted,

**GOLD BENNETT CERA & SIDENER LLP**

By: _____
Thomas C. Bright (SBN 169713)

-and-

**THE ROSEN LAW FIRM, P.A.**

By: _____
Laurence M. Rosen, Esq. (SBN 219683)

Attorneys for Lead Plaintiffs
and All Other Similarly Situated

## CERTIFICATE OF PLAINTIFF

I, Michael J. Corbett, on behalf of Perritt Emerging Opportunities Fund, hereby certify that:

1. I am the President, Chief Investment Officer and Portfolio Manager of Perritt Emerging Opportunities Fund ("Perritt Fund"). I am familiar with the matters set forth herein and am duly authorized to make this Certification on behalf of the Perritt Fund.

2. I have reviewed a complaint prepared by the Perritt Fund's attorneys, Gold Bennett Cera & Sidener LLP, and the Perritt Fund agrees to be a representative plaintiff in this action.

3. The Perritt Fund did not purchase China Intelligent Lighting and Electronics, Inc. ("China Lighting") securities that are the subject of the complaint at the direction of counsel or to participate in any private action arising under the Securities Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995. The Perritt Fund invested in China Lighting securities solely for its own business purposes.

4. The Perritt Fund is willing to serve as representative parties on behalf of a class, including providing testimony at deposition and trial, if necessary.

5. I have reviewed the records of the Perritt Fund's transactions in China Lighting securities. The Perritt Fund purchased and/or sold China Lighting securities in the amounts and on the dates identified in the attachment hereto.

### [SEE ATTACHED SCHEDULE]

6. In the three years preceding the date of this certificate, the Perritt Fund has not

#123977

-1-

sought to serve as a representative party on behalf of a class in an action brought under the federal securities laws.

7.    The Perritt Fund will not accept any payment for serving as a representative party on behalf of the Class beyond their pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the Class and the Perritt Fund's activities in the lawsuit, as ordered or approved by the Court.

8.    Nothing herein shall be construed to be or constitute a waiver of the Perritt Fund's attorney-client privilege.

I certify under penalty of perjury that the foregoing is true and correct.  Executed on May 25, 2011.

Michael J. Corbett
President, Chief Investment Officer and Portfolio Manager
Perritt Emerging Opportunities Fund

#123977

-2-

**CHINA INTELLIGENT LIGHTING AND ELECTRONICS, INC.**
**PERRITT EMERGING OPPORTUNITIES FUND**

| Date | Symbol | Desc. | Shares | Price Per Share | Amount |
|------|--------|-------|--------|-----------------|--------|
| 06/23/10 | CIL | Buy | 300,000 | 3.0000 | $ 900,000.00 |
| 11/12/10 | CIL | Sell | 5,700 | 3.5270 | $20,104.12 |

**TOTAL SHARES PURCHASED DURING CLASS PERIOD** | 300,000 |

**TOTAL PURCHASE PRICE DURING CLASS PERIOD**                    $ 900,000.00

**TOTAL SHARES SOLD**                         5,700

**NET SHARES PURCHASED DURING THE CLASS PERIOD** | 294,300 |

**TOTAL RECEIVED FROM SALES**                    $20,104.12

**NET FUNDS EXPENDED DURING CLASS PERIOD** | $ 879,895.88 |

**THE APPROXIMATE LOSS** | $879,895.88 |

## CERTIFICATION

The individual or institution listed below (the "Plaintiff") authorizes the Rosen Law Firm, P.A. to file an action or amend a current action under the federal securities laws to recover damages and to seek other relief against China Intelligent Lighting and Electronics, Inc. ("CIL"), and certain of its officers and directors. The Rosen Law Firm, P.A. agrees to prosecute the action on a contingent fee basis not to exceed one-third of any recovery and will advance all costs and expenses. Any legal fees and expenses will be determined by, and payable, only upon order of the U.S. District Court.

Plaintiff declares, as to the claims asserted under the federal securities laws, that:

1.      I have reviewed the complaint against CIL and certain of its officers and directors and I retain the Rosen Law Firm, P.A. as counsel in this action for all purposes.

2.      I did not engage in transactions in the securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in this or any other litigation under the securities laws of the United States.

3.      I am willing to serve as a lead plaintiff either individually or as part of a group. A lead plaintiff is a representative party who acts on behalf of other class members in directing the action, and whose duties may include testifying at deposition and trial.

4.      The following is a list of all of the purchases and sales I have made in CIL securities during the class period set forth in the complaint.  I have made no transactions during the class period in the debt or equity securities that are the subject of this lawsuit except those set forth below.

| Number of Shares Purchased or Sold | Date(s) Purchased ᵛⁱᵃ ᴿᴼᴼᴷᴬᴺ | Price Paid Per Share | Date(s) Sold (if applicable) | Price Sold Per Share |
|---|---|---|---|---|
| 150,000 | 6/10/2010 | $3.0 | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | S |
| | | $ | | $ |
| | | $ | | $ |

PLEASE FAX CERTIFICATION TO ROSEN LAW FIRM at (212) 202-3827
OR EMAIL TO INFO@ROSENLEGAL.COM OR SEND BY U.S. MAIL TO:
THE ROSEN LAW FIRM PA
275 MADISON AVENUE, 34ᵗʰ FLOOR
NEW YORK, NY 10016

5.      I have not, within the three years preceding the date of this certification, sought to serve or served as a representative party on behalf of a class in an action involving alleged violations of the federal securities laws, except: for the following company(ies):

6.      I will not accept any payment for serving as a representative party beyond my pro rata share of any recovery, except reasonable costs and expenses, such as travel expenses and lost wages directly related to the class representation, as ordered or approved by the court pursuant to law.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 22 day of ___m-i-y___, 2011.

UNIVERSAL INVEST QUALITY SICAV

Signature: _____

By:    Antoine de Sejournet

**REDACTED**

Title: _____

Address:

Phone:
E-mail:

Item. 4 (continue from prior page if needed)

| Number of Shares Purchased or Sold | Date(s) Purchased | Price Paid Per Share | Date(s) Sold (if applicable) | Price Sold Per Share |
|---|---|---|---|---|
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |

PLEASE FAX CERTIFICATION TO ROSEN LAW FIRM at (212) 202-3827    2
OR EMAIL TO INFO@ROSENLEGAL.COM OR SEND BY U.S. MAIL TO:
THE ROSEN LAW FIRM PA
275 MADISON AVENUE, 34th FLOOR
NEW YORK, NY 10016

## CERTIFICATION

The individual or institution listed below (the "Plaintiff") authorizes the Rosen Law Firm, P.A. to file an action or amend a current action under the federal securities laws to recover damages and to seek other relief against China Intelligent Lighting and Electronics, Inc. ("CIL"), and certain of its officers and directors. The Rosen Law Firm, P.A. agrees to prosecute the action on a contingent fee basis not to exceed one-third of any recovery and will advance all costs and expenses. Any legal fees and expenses will be determined by, and payable, only upon order of the U.S. District Court.

Plaintiff declares, as to the claims asserted under the federal securities laws, that:

1.      I have reviewed the complaint against CIL and certain of its officers and directors and I retain the Rosen Law Firm, P.A. as counsel in this action for all purposes.

2.      I did not engage in transactions in the securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in this or any other litigation under the securities laws of the United States.

3.      I am willing to serve as a lead plaintiff either individually or as part of a group. A lead plaintiff is a representative party who acts on behalf of other class members in directing the action, and whose duties may include testifying at deposition and trial.

4.      The following is a list of all of the purchases and sales I have made in CIL securities during the class period set forth in the complaint. I have made no transactions during the class period in the debt or equity securities that are the subject of this lawsuit except those set forth below.

| Number of Shares Purchased or Sold | Date(s) Purchased | Price Paid Per Share | Date(s) Sold (if applicable) | Price Sold Per Share |
|---|---|---|---|---|
| 75.000 | 6/10/2010 | $3.0 | | $ |
| | | $ | 2000 25/6/10 | $ 2.98 |
| | | $ | 2000 25/6/10 | $ 3.19 |
| | | $ | 855 25/6/10 | $ 3.05 |
| | | $ | 200 25/6/10 | $ 3.04 |
| | | $ | 945 25/6/1 | $ 3.01 |
| | | $ | 2000 28/6/10 | $ 2,90 |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |

PLEASE FAX CERTIFICATION TO ROSEN LAW FIRM at (212) 202-3827
OR EMAIL TO INFO@ROSENLEGAL.COM OR SEND BY U.S. MAIL TO:
THE ROSEN LAW FIRM PA
275 MADISON AVENUE, 34th FLOOR
NEW YORK, NY 10016

5.    I have not, within the three years preceding the date of this certification, sought to serve or served as a representative party on behalf of a class in an action involving alleged violations of the federal securities laws, except: for the following company(ies):

6.    I will not accept any payment for serving as a representative party beyond my pro rata share of any recovery, except reasonable costs and expenses, such as travel expenses and lost wages directly related to the class representation, as ordered or approved by the court pursuant to law.

I declare under penalty of perjury that the foregoing is true and correct. Executed this __27___ day of __may_____, 2011.

ACERCO SA

Signature: _____
By:    Antoine de Sejournet
Title:  Administrateur

**REDACTED**

Address: ▓▓▓▓▓▓▓▓▓▓

Phone: ▓▓▓▓▓▓▓▓▓▓
E-mail: ▓▓▓▓▓▓▓▓▓▓

Item. 4 (continue from prior page if needed)

| Number of Shares Purchased or Sold | Date(s) Purchased | Price Paid Per Share | Date(s) Sold (if applicable) | Price Sold Per Share |
|---|---|---|---|---|
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |

PLEASE FAX CERTIFICATION TO ROSEN LAW FIRM at (212) 202-3827                                 2
OR EMAIL TO INFO@ROSENLEGAL.COM OR SEND BY U.S. MAIL TO:
THE ROSEN LAW FIRM PA
275 MADISON AVENUE, 34th FLOOR
NEW YORK, NY 10016

## CERTIFICATION

The individual or institution listed below (the "Plaintiff") authorizes the Rosen Law Firm, P.A. to file an action or amend a current action under the federal securities laws to recover damages and to seek other relief against China Intelligent Lighting and Electronics, Inc. ("CIL"), and certain of its officers and directors. The Rosen Law Firm, P.A. agrees to prosecute the action on a contingent fee basis not to exceed one-third of any recovery and will advance all costs and expenses. Any legal fees and expenses will be determined by, and payable, only upon order of the U.S. District Court.

Plaintiff declares, as to the claims asserted under the federal securities laws, that:

1.      I have reviewed the complaint against CIL and certain of its officers and directors and I retain the Rosen Law Firm, P.A. as counsel in this action for all purposes.

2.      I did not engage in transactions in the securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in this or any other litigation under the securities laws of the United States.

3.      I am willing to serve as a lead plaintiff either individually or as part of a group. A lead plaintiff is a representative party who acts on behalf of other class members in directing the action, and whose duties may include testifying at deposition and trial.

4.      The following is a list of all of the purchases and sales I have made in CIL securities during the class period set forth in the complaint. I have made no transactions during the class period in the debt or equity securities that are the subject of this lawsuit except those set forth below.

| Number of Shares Purchased or Sold | Date(s) Purchased | Price Paid Per Share | Date(s) Sold (if applicable) | Price Sold Per Share |
|---|---|---|---|---|
| 25.000 | 6/10/2010 | $3.0 | | $ |
| -402 | | $ | 13/8/2010 | $ 3.49 |
| -9598 | | $ | 8/11/2010 | $ 3.4855 |
| | | $ | | |
| | | $ | | |
| | | $ | | |
| | | $ | | |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |

PLEASE FAX CERTIFICATION TO ROSEN LAW FIRM at (212) 202-3827
OR EMAIL TO INFO@ROSENLEGAL.COM OR SEND BY U.S. MAIL TO:
THE ROSEN LAW FIRM PA
275 MADISON AVENUE, 34th FLOOR
NEW YORK, NY 10016

5.    I have not, within the three years preceding the date of this certification, sought to serve or served as a representative party on behalf of a class in an action involving alleged violations of the federal securities laws, except: for the following company(ies):

6.    I will not accept any payment for serving as a representative party beyond my pro rata share of any recovery, except reasonable costs and expenses, such as travel expenses and lost wages directly related to the class representation, as ordered or approved by the court pursuant to law.

I declare under penalty of perjury that the foregoing is true and correct. Executed this __27___ day of __may_____, 2011.

Signature:

By:    Antoine de Sejournet
Title:

REDACTED    Address:

Phone:
E-mail:

Item. 4 (continue from prior page if needed)

| Number of Shares Purchased or Sold | Date(s) Purchased | Price Paid Per Share | Date(s) Sold (if applicable) | Price Sold Per Share |
|---|---|---|---|---|
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |

PLEASE FAX CERTIFICATION TO ROSEN LAW FIRM at (212) 202-3827          2
OR EMAIL TO INFO@ROSENLEGAL.COM OR SEND BY U.S. MAIL TO:
THE ROSEN LAW FIRM PA
275 MADISON AVENUE, 34th FLOOR
NEW YORK, NY 10016

## PROOF OF SERVICE

I, Leonid Prilutskiy, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury as follows:

I am an employee of the Rosen Law Firm, P.A. I am over the age of eighteen. On  September 6, 2011, I served the following **CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE SECURITIES LAWS** by U.S. mail to counsel of record for defendants at the addresses listed below:

Jay S Auslander
Natalie Shkolnik
Julie Cilia
Joseph Zelmanovitz
 Wilk Auslander LLP
 675 Third Avenue 9th Floor
 New York, NY 10017

Matthew Clark Bures
 Dongell Lawrence Finney LLP
 707 Wilshire Boulevard 45th Floor
 Los Angeles, CA 90017

Counsel for defendants Westpark Capital, Inc. and Rodman & Renshaw, LLC

China Intelligent Lighting and Electronics, Inc.
Paul Matthews Process Agent
Corporation Service Co.
2711 Centerville Road
Wilmington, DE 19807

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on September 6, 2011, in New York, New York.

Leonid Prilutskiy

# EXHIBIT 1



# WESTPARK CAPITAL

I N V E S T M E N T   B A N K I N G

CONTACT

TRANSACTIONS

HOME



CLIENT LOGIN

Receive our quarterly
NEWSLETTER ···→

visit our **BLOG** site ···→



Investor
Mailbox

## WESTPARK CAPITAL, Inc. is a full service invest
needs of both private and public companies worldwide,

Continue Article>

## ■ WRASP™

A WRASP™ is a process in which a Company becomes publicly trade
through a Share Exchange and trades directly onto a Senior Exchange
NYSE Amex or the NASDAQ, completely bypassing the OTCBE
WestPark's WRASP™ blends components of a Public Offering and
Share Exchange, encompassing the cost effectiveness and timeliness
a Share Exchange while also retaining the increased market awarene
and liquidity of a traditional Public Offering.

Continue Article>

Transactions  |  Privacy Policy  |  Conditions of Use  |  Business Continuity Disclosure  |  Best Execution Reports  |  Local

Annual Notice of Important Policies and Disclosures      Copyright :

# EXHIBIT 2

# STRUCTURED IPO
## *WRASP*

### BY



*WestPark Capital, Inc.*
INVESTMENT BANKING

Member FINRA/SIPC

**1900 Avenue of the Stars, Suite 310**
**Los Angeles, CA 90067**
**Phone: 310.843.9300**
**www.wpcapital.com**

# WRASP Structured IPO

- WestPark aims to identify and provide capital to medium-sized emerging growth companies and offer value to this sector of the market.

- Using a WRASP Structured IPO involves a set of interrelated transactions managed by WestPark Capital, Inc. ("WestPark"), a FINRA-registered broker-dealer.

*A WRASP is a Structured IPO devised by WestPark Capital, Inc. through which a company lists directly on a senior exchange (such as NYSE Amex or NasdaqCM), raising capital in various stages throughout the process.*



WESTPARK CAPITAL, INC.
INVESTMENT BANKING

# Overview of a WRASP

- The owners of the Operating Company take control of Form 10 entity, created exclusively for this transaction, through a shares exchange and files necessary documents with SEC.

- Concurrent with the Share Exchange, WestPark conducts a small private placement ($5 million to $8 million) of common stock equity.
  - This is in addition to any larger funding requirements.

- Listing Phase:
  - Stock symbol issued.
  - A second fund-raising (IPO) of between $10 million to $30 million through an underwritten, fully reviewed, registration statement.
  - NASDAQ or NYSE Amex clears stock for trading.
  - Stock begins trading.



# WRASP Dual-Track Fundraising

- The Operating Company has two fundraising options after the completion of the share exchange and private placement:
  - Track I)
    - To raise a lower amount ($5 million to $8 million) at the time of trading followed by a substantial follow-on financing ($15 million and up),

      -or-
  - Track II)
    - To raise a larger amount of capital ($10 million to $30 million) at the time of trading.
    - Eliminates the need for a follow-on fundraising in the near future.



# WRASP Dual-Track Fundraising (cont.)



# The WRASP Form 10 Company

- The Form 10 Company has been designed specifically for a WRASP transaction.
    - The Form 10 Company has cleared SEC filing requirements.
    - The Form 10 Company is fully-reporting.
    - The Form 10 Company has never been traded.
- The WRASP Form 10 Company has had no prior operations and is completely clean of liabilities.
    - No litigation liability or impending shareholder suits.
- Since the WRASP Form 10 has never engaged in any business activities, there is no need for costly and time consuming due diligence.
- A WRASP Form 10 allows the Company to have time to improve internal controls prior to trading.



# Advantages of a WRASP

- The Company *only* trades on a U.S. senior exchange, which generally possesses superior:
  - Trading volume
  - Visibility through equity research coverage by analysts
  - Valuation
  - Institutional coverage
- The initial fund-raising that closes concurrently with the Share Exchange covers all the costs of the WRASP transaction and provides the Company with capital.



# WRASP Track Record

- <u>Successful:</u> More than $160 Million in financings have been completed for WRASP companies.

- <u>Focused:</u> The average daily trading volume for a WRASP company is 170,000 shares/day.

- <u>Active:</u> WestPark has closed 22 WRASP related transactions to date.



# WRASP Liquidity Comparison



**WRASP companies trade with enhanced liquidity; the average daily trading volume for a WRASP is 170,000 shares.**

*(1) As of 01/31/11.*
*(2) Source: CapIQ.*

*WESTPARK CAPITAL, INC.*
INVESTMENT BANKING

# Timeframe of a WRASP

| STEP 1 | | | STEP 2 | | | |
|---|---|---|---|---|---|---|
| DAY | | | | | | |
| 1 | 23 | 30 | 35 | 50 | 119 | 120 |
| Share Exchange agreement reviewed and signed | 8-K disclosing Share Exchange prepared and filed | Share Exchange and $3-5 million private placement close | File with senior exchange, FINRA, and the SEC | Receive comments | Issue declared effective by the SEC | Stock begins trading with $10-30 million raise |

**RECENT WRASP EXAMPLES**

| | | | | | | |
|---|---|---|---|---|---|---|
| ZST Digital Networks, Inc. | | 05/05/09 | | | | 10/20/09 |



# WRASP Example – China

ZST Digital Networks, Inc. (NASDAQ GM:ZSTN) develops, manufactures, and supplies digital and optical network equipment to cable system operators in the P.R.C. The company offers a range of cable television devices and related networking products, including Internet protocol television set-top boxes, which integrate Internet, multi-media, and communication technologies, and provide residential customers with high definition digital multi-media service, as well as facilitate to choose video programs offered by the network video providers on broadband IP network. The company was founded in 1996 and is headquartered in Zhengzhou, the People's Republic of China.





- Private Placement Offering: $5,000,000
- Public Offering:  $25,000,000
- Total Offering:  $30,000,000



# WRASP Process Comparison

## *WRASP vs. Private Equity*

- In WRASP transactions, the Company remains in control, appoints their own Board positions and there are no restrictive convenants vs. a typical transaction with a Private Equity firm that prefers control, maintains Board positions and impose restrictive covenants, and occasionally imposes claw-back provisions.
- The WRASP investors are non-controlling (passive) investors in the private placement vs. controlling investors (private equity)
- Taking a company public through a WRASP not only brings increased liquidity but the potential for stock price appreciation to the investors and the Company.
- The Use of Proceeds from a WRASP can be used for transaction fees and working capital (both in or outside of the country of origin).
- A WRASP transaction allows for greater access to the capital markets for possible future stock offerings and financings.



# WRASP Process Comparison

## *WRASP vs. Basic IPO*

- The WRASP encompasses extensive financial, legal, and strategic due diligence similar to those efforts undertaken in a Basic IPO.
- The WRASP possesses the cost-effectiveness and timeliness of a merger.
    - A Basic IPO can take upwards of a year and cost more than $1 Million in upfront fees.
- The WRASP process is not as sensitive to changes in the market – thus reducing Company risk and cost.
    - Basic IPOs can be withdrawn and postponed due to poor market conditions.
- The WRASP process allows the Company to raise a smaller amount of capital with a lower valuation at the time of the Private Placement, followed by a larger raise at the time of the Public Offering, creating a less dilutive situation for shareholders.


WESTPARK CAPITAL, INC.
INVESTMENT BANKING

# Operating as a U.S. Public Company

- WestPark will fully manage the Structured IPO process with the Company ensuring full compliance as a newly publicly reporting issuer and coordinating the work of attorneys, accountants and professional advisors.

- The owners of the original operating company maintain full control and the company operates as usual in its country of origin; even maintaining its original tax status.

- The Company must adhere to U.S. Public Financial Reporting standards and Sarbanes Oxley requirements.
    - Maintenance of internal controls with certain standards regarding corporate governance.
    - Maintenance of quarterly financial reporting and filing requirements (10Q's and 10K's)

- As a public company, there is more transparency and visibility – which can be viewed as increased international brand recognition for a Company.



WEST PARK CAPITAL, INC.
INVESTMENT BANKING

# Transaction Costs

- Pre-IPO costs are kept low.
    - The Company will pay approximately $150,000 to $200,000 for upfront out of pocket expenses including legal, audit and WestPark retainers to implement the Share Exchange and the Private Placement and to begin the Structured IPO process, with the remainder of transaction costs being paid from the proceeds of the Private Placement.

- Post-IPO maintenance costs for a Public Company in the U.S. will be approximately $250,000 to $300,000 per year.
    - Including quarterly and annual filings (legal and audit), in addition to 8-K filings made by the Company.
    - Additionally, the Company will want to outsource investor relations activities for press releases and non-deal roadshows.



WESTPARK CAPITAL, INC.
INVESTMENT BANKING

# WRASP Quantitative Requirements

| | MINIMUM |
|---|---|
| Net Income: | $8,000,000 in last fiscal year or in the last twelve months (LTM) |
| Net Income Growth: | 25% Year-Over-Year (YOY) |
| | |

