1

GOLD BENNETT CERA & SIDENER LLP
Solomon B. Cera (SBN 99467)
Thomas C. Bright (SBN 169713)
595 Market Street, Suite 2300
San Francisco, California 94105
Telephone: (415) 777-2230
scera@gbcslaw.com
tbright@gbcslaw.com

2

3

4

5

6

-and-

7

THE ROSEN LAW FIRM, P.A.
Laurence M. Rosen (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, California 90071
Telephone: (213) 785-2610
lrosen@rosenlegal.com

8

9

10

Co-Lead Counsel for Plaintiffs and the Class

11

12

13

UNITED STATES DISTRICT COURT

14

CENTRAL DISTRICT OF CALIFORNIA

15

16

| IN RE CHINA INTELLIGENT LIGHTING AND ELECTRONICS, INC. SECURITIES LITIGATION | Case No.: 2:11-cv-02768-PSG (SSx) |
|---|---|
| | **MEMORANDUM IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENTS AND PLAN OF ALLOCATION** |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | Date:      March 9, 2015 |
| | Time:      1:30 p.m. |
| | Courtroom: 880 |
| | Judge:      Hon. Philip S. Gutierrez |

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF CONTENTS

**Page(s)**

I.   OVERVIEW OF THE LITIGATION .......................................................... 1

II.  THE COURT SHOULD APPROVE THE PROPOSED SETTLEMENTS
     AS FAIR, REASONABLE AND ADEQUATE TO THE CLASS ............. 3

     A.   Standards of Review ........................................................................ 3

     B.   All of the Relevant Considerations Employed by Courts in This
          Circuit Favor Approval of the Proposed Settlements ........................ 4

          1.   Strength of Plaintiffs' Case, The Risk, Expense, Complexity
               and Likely Duration of Further Litigation ............................... 5

          2.   Pragmatic Considerations ....................................................... 7

          3.   The Amount Offered in the Settlement ................................... 8

          4.   Risk of Maintaining a Class Action ...................................... 10

          5.   Stage of the Proceedings ....................................................... 10

          6.   Experienced Counsel Concur that the Settlements, Which
               Were Negotiated in Good Faith and at Arm's-Length,
               Are Fair, Reasonable, and Adequate ..................................... 11

          7.   The Reaction of the Class Members to the Settlement .......... 12

III. THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION .... 12

IV.  CONCLUSION ..................................................................................... 14

i

# TABLE OF AUTHORITIES

**Cases**

*Class Plaintiffs v. City of Seattle*
    955 F.2d 1268 (9th Cir. 1992) ..................................................................3, 13

*Ellis v. Naval Air Rework Facility*
    87 F.R.D. 15 (N.D. Cal. 1980) ..................................................................4, 11

*Evans v. Jeff D.*
    475 U.S. 717 (1986) .........................................................................................4

*Hanlon v. Chrysler Corp.*
    150 F.3d 1011 (9th Cir. 1998) .............................................................3, 4, 12

*In re Cendant Corp. Sec. Litig.*
    109 F. Supp. 2d 235 (D.N.J. 2000) ...............................................................8

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) .................................................................14

*In re Heritage Bond Litig.*
    No. 02-ML-1475 DT, 2005 WL 1594403
    (C.D. Cal. June 10, 2005) ...............................................................6, 9, 10, 13

*In re Ikon Office Solutions, Inc.*
    194 F.R.D. 166 (E.D. Pa. 2000) ....................................................................8

*In re Mego Fin. Corp. Sec. Litig.*
    213 F.3d 454 (9th Cir. 2000) .....................................................................3, 12

*In re MicroStrategy, Inc. Sec. Litig.*
    148 F. Supp. 2d 654 (E.D. Va. 2001) ..........................................................13

*In re Nasdaq Market-Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) ...................................................................6

*In re Oracle Sec. Litig.*
    No. C-90-931-VRW, 1994 WL 502054 (N.D. Cal. June 18, 1994) ............13

*In re Painewebber Ltd. P'ships Litig.*
    171 F.R.D. 104 (S.D.N.Y.1997) ..................................................................11

*In re Sumitomo Copper Litig.*
    189 F.R.D. 274 (S.D.N.Y. 1999) ............................................................9, 10

*In re Warfarin Sodium Antirust Litig.*
    391 F.3d 516 (3d Cir. 2004) ...........................................................................9

# TABLE OF AUTHORITIES

*In re Warner Comm. Sec. Litig.*
    618 F. Supp. 735 (S.D.N.Y. 1985) ....................................................6

*Linney v. Alaska Cellular P'ship*
    No. C-96-3008 DLJ, 1997 WL 450064 (N.D. Cal. July 18, 1997) ...............4

*Linney v. Cellular Alaska P'ship*
    151 F.3d 1234 (9th Cir. 1998) ...............................................3, 4

*Officers for Justice v. Civil Serv. Comm'n.*
    688 F.2d 615 (9th Cir. 1982) ................................................3, 4

*Robbins v. Koger Props., Inc.*
    116 F.3d 1441 (11th Cir. 1997) ...............................................10

*Telecom. Coop. v. DIRECTV, Inc.*
    221 F.R.D. 523 (C.D. Cal. 2004) ............................................10

*Torrisi v. Tucson Elec. Power Co.*
    8 F.3d 1370 (9th Cir. 1993) .................................................8

*Viscaino v. U.S. District Court*
    173 F.3d 713 (9th Cir. 1999) ...............................................10

*West Virginia v. Chas. Pfizer & Co.*
    314 F. Supp. 710 (S.D.N.Y. 1970) ...........................................6

**Statutes, Rules and Regulations**

Federal Rule of Civil Procedure
    Rule 23(e) ...............................................................1, 3
    Rule 23(c)(1) ............................................................10

Private Securities Litigation Reform Act of 1995
    15 U.S.C. §78u-4 ........................................................12

Securities Act of 1933, Section 11
    15 U.S.C. §77k ..........................................................5

Securities Act of 1933, Section 12
    15 U.S.C. §77l(a) .......................................................5

Securities Act of 1933, Section 15
    15 U.S.C. §77o ..........................................................5

**Other Authorities**

Ellen M. Ryan and Laura E. Simmons, Securities Class Action Settlements, 2010
    Review and Analysis .....................................................8

## <u>TABLE OF AUTHORITIES</u>

1

*Manual for Complex Litigation* (Third) § 30.42 (1995).........................................11

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Lead Plaintiffs Perritt Emerging Opportunities Fund and Acerco SA, and Antoine de Sejournet (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, by their undersigned attorneys, submit this motion pursuant to Federal Rule of Civil Procedure 23(e) for final approval of the class action Settlements, as set forth in the Stipulation of Settlement dated June 26, 2014 between Plaintiffs and defendant MaloneBailey (the "MaloneBailey Stipulation") and the Stipulation of Settlement dated May 1, 2014 between Plaintiffs and defendants WestPark Capital, Inc. ("WestPark") and Richard Rappaport (collectively the "WestPark Defendants") and the Stipulation of Settlement dated March 21, 2014 between Plaintiffs and defendant Kempisty & Company, P.C. ("Kempisty") (collectively the "Settling Defendants"). This Action has been settled for a total of $631,600. The Settlements results from Plaintiffs' vigorous case prosecution and arm's-length settlement negotiations between the parties.[1]

I.   **OVERVIEW OF THE LITIGATION**[2]

This Action was filed as a class action on behalf of purchasers of defendant China Intelligent Lighting and Electronics, Inc. ("CIL" or the "Company") common stock pursuant or traceable to two separate Registration Statements and three accompanying Prospectuses filed with the SEC by CIL (the "Class"). The Registration Statement for an initial public offering ("IPO") of CIL common stock was declared effective by the SEC on June 17, 2010 and was accompanied by a Prospectus filed with the SEC on June 21, 2010 (collectively the "IPO Registration Statement") By Order dated July 7, 2011, Perritt Emerging Opportunities Fund

---

[1]   Unless otherwise defined, capitalized terms herein have the same meanings attributed to them in the Stipulations.

[2]   For the sake of brevity, a full description of the procedural history of this Action has been omitted. It can be found in the Joint Declaration of Laurence M. Rosen and Thomas C. Bright in Support of Plaintiffs' Motion for Final Approval of Class Action Settlements and Plan of Allocation and for Award of Attorneys' Fees and for Reimbursement of Expenses ("Joint Dec."), filed herewith. ¶¶7-21.

Acerco SA, and Antoine de Sejournet were appointed as Co-Lead Plaintiffs, and their choice of The Rosen Law Firm, P.A. and Gold Bennett Cera & Sidener LLP as Co-Lead Counsel was approved. *See* Joint Dec. ¶8.

The Settlements were reached only after Plaintiffs' Counsel's aggressive and comprehensive prosecution efforts, as follows: (a) reviewing and analyzing publicly available information about CIL, including the Company's SEC filings, Chinese State Administration of Industry and Commerce ("SAIC") filings, and consulting with retained experts in forensic accounting and financial damages and underwriting standards; (b) substantial motion practice, including drafting complaints, and opposing multiple motions to dismiss, and obtaining class certification.  Joint Dec. ¶ 6.

To date, 6,861 claim packets, including the detailed "Notice of Pendency and Settlement of Class Action," ('the "Notice") and "Proof of Claim and Release" form have been sent by first-class mail to potential Settlement Class Members, and a Summary Notice has been timely published in Investor's Business Daily and the Globe Newswire.  *See* Declaration of Carole A. Sylvester Re (1) Mailing Of The Notice Of Pendency Of Class Action And Proposed Partial Settlement, Settlement Hearing, And Motion For Attorneys' Fees And Reimbursement Of Litigation Expenses And The Proof Of Claim And Release Form, (2) Publication Of The Summary Notice, (3) Reports On Request For Exclusion, And (4) Internet Posting ("Sylvester Dec."), Ex. 1 to the Joint Declaration.  The deadline to file objections to the Settlement or request exclusion from the settlement is February 16, 2015. To date, there have been no valid requests for exclusion or objections. *See* Sylvester Dec., ¶14.

As detailed in the Joint Declaration, the Settlements represent a realistic assessment by knowledgeable and experienced attorneys of the risks of further proceedings. The Settlements confer an immediate and substantial benefit on the

2

Settlement Class. They represent a recovery of approximately 7% of the Class'
maximum potential damages of $9.1 million, and eliminate the risk, expense and
uncertainty of continued litigation under circumstances where a more favorable
outcome was at great risk and extremely doubtful given the financial circumstances
of the Settling Defendants. Joint Dec., ¶37-43. By any objective measure, the
Settlements are fair, reasonable, and adequate and should be approved.

## II.    THE COURT SHOULD APPROVE THE PROPOSED SETTLEMENTS AS FAIR, REASONABLE AND ADEQUATE TO THE CLASS

### A.    Standards of Review

Federal Rule of Civil Procedure 23(e) provides that in a class action "[t]he
court must approve any settlement, voluntary dismissal, or compromise of the
claims, issues, or defenses." In deciding whether to approve a proposed settlement,
the Ninth Circuit has a "strong judicial policy that favors settlements, particularly
where complex class action litigation is concerned." *Linney v. Cellular Alaska
P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) ; *Class Plaintiffs v. City of Seattle*, 955
F.2d 1268, 1276 (9th Cir. 1992).  Consequently, in making its assessment pursuant
to Rule 23(e), the Court's intrusion upon what is otherwise a private consensual
agreement negotiated between the parties to a lawsuit must be limited to the extent
necessary to reach a reasoned judgment that the agreement is not the product of
fraud or overreaching by, or collusion between, the negotiating parties, and that the
settlement, taken as a whole, is fair, reasonable and adequate to all concerned.
*Officers for Justice v. Civil Serv. Comm'n.*, 688 F.2d 615, 625 (9th Cir. 1982) ; *see
also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000); *Hanlon
v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

There is no prescribed settlement approval procedure to be followed in this
Circuit.  Rather, it is within the "sound discretion of the district courts to appraise
the reasonableness of particular class-action settlements on a case-by-case basis."

*Evans v. Jeff D.*, 475 U.S. 717, 742 (1986); *see also Hanlon*, 150 F.3d at 1011, 1025. To avoid excessive intrusion into the parties' compromise, the court considers the settlement taken as a whole, rather than its individual component parts, and examines it for overall fairness. *Officers for Justice*, 688 F.2d at 628. Consequently, a settlement hearing is "not to be turned into a trial or rehearsal for trial on the merits," nor should the proposed settlement "be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id.* at 625. To the contrary, "[t]he involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length [sic] negotiations, after relevant discovery had taken place create a presumption that the agreement is fair." *Linney v. Alaska Cellular P'ship*, No. C-96-3008 DLJ, 1997 WL 450064, *5 (N.D. Cal. July 18, 1997), *aff'd.*, 151 F.3d 1234 (9th Cir. 1998); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd.*, 661 F.2d 939 (9th Cir. 1981).

As explained below, the Settlements were reached after protracted litigation by experienced counsel on both sides, and then only after arm's-length negotiations with the aid of a nationally regarded mediator. Under these circumstances, the Settlements should be afforded the presumption of fairness.

## B. All of the Relevant Considerations Employed by Courts in This Circuit Favor Approval of the Proposed Settlements

To determine whether a proposed settlement is fair, reasonable, and adequate, a court must examine the following factors: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Linney*, 151 F.3d at 1242; *Hanlon*, 150 F.3d at 1026. As

applied to the instant action, these factors all point toward approval of the proposed Settlements.

### 1. Strength of Plaintiffs' Case, The Risk, Expense, Complexity and Likely Duration of Further Litigation

Although Defendants' motions to dismiss were denied, Plaintiffs were required to prove that CIL's financial statements were materially false, that Plaintiff could trace their shares to CIL's IPO, and would be required to rebut Defendants' affirmative defenses of "negative causation" (i.e. that Plaintiff's losses were caused by something other than the alleged false statements).

The primary claims in this action were based on Sections 11, 12 and 15 of the Securities Act of 1933 (the "Securities Act") 15 U.S.C. §§77k, 77l(a)(2), and 77o, under the theory that CIL overstated its financial performance to raise money from investors in an initial public offering and secondary offering of common stock in the United States. In connection with these offerings, CIL overstated its revenues, gross profits, net income, total assets, and shareholders' equity for fiscal years 2008 and 2009.[3] Plaintiffs claimed that MaloneBailey and Kempisty, as CIL's auditors, failed to conduct a diligent investigation into the veracity of the alleged false statements contained in the Registration Statements, including the financial statements, and participated in the issuance of material misstatements to the investing public. Plaintiffs claimed that MaloneBailey and Kempisty did not make a reasonable investigation or possess reasonable grounds for the belief that the alleged false financial statements were true and did not contain any omission of material fact. Plaintiffs also alleged that WestPark and Rappaport, as CIL's Underwriters, are covered persons under the applicable statutes and therefore are liable for CIL's misstatements

---

[3]   Plaintiffs have obtained a default judgment against defendant CIL. ECF No. 264.

Plaintiffs would have to rebut the Settling Defendants' due diligence defenses and provide evidence that Settling Defendants did not exercise adequate due diligence.

While Plaintiffs believe they have good arguments and evidence to support their claims, establishing liability at trial is by no means guaranteed. *See In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *7 (C.D. Cal. June 10, 2005) ("It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced") (*quoting West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970)).

In addition, Settling Defendants would present their own evidence, including expert testimony, to attempt to demonstrate that Plaintiffs' losses were caused by factors other than the alleged misstatements.  Consequently, expert discovery and trial preparation would be very expensive and complex. While certainly attainable, obtaining a favorable judgment in such a complex trial is hardly assured:

In this "battle of experts," it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions.

*In re Warner Comm. Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985); *see also Heritage*, 2005 WL 1594403, at *6 (noting that class actions have a well-deserved reputation as being the most complex) (citation omitted); *In re Nasdaq Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 477 (S.D.N.Y. 1998) (same).

Although Plaintiffs believe they have arguments and evidence to counter each one of Defendants' positions and are confident that their presentation would have carried the burden of proof at trial, there is no guarantee that this would indeed be the case. This is especially true when one considers the complexity of

6

Defendants' various defenses, and the difficulties of proof under the federal securities laws.

### 2.    <u>Pragmatic Considerations</u>

Setting aside the difficulties in proving Plaintiffs' claims, pragmatic considerations show that settlement at this time is in the best interests of the Class.

The company in this litigation, CIL, has defaulted, and there are obviously enormous problems with the notion of collecting on a U.S. class action judgment in China.

Many of the Individual Defendants are Chinese residents, and litigation costs would likely be enormous due to travel, translation of documents and testimony, and other related costs associated with pursuing claims against foreign defendants in China.  Moreover, the minimal insurance and assets held by the Settling Defendants would be significantly depleted by the defense in the course of litigation were it to continue.

CIL conducts all of its operations in the PRC.  The underlying events and transactions that form the basis of the alleged misstatements and omissions occurred in China. Thus, the bulk of the relevant documentation and communications will be in Chinese, and the percipient witnesses are likely to speak only Chinese.  These issues are further complicated by the fact that depositions are not permitted in China; therefore, travel, interpreters, and related costs would be extremely high.  Even without the language barrier and witnesses halfway around the world, absent a settlement the parties would expend a significant amount of funds attempting to rebut each other's experts on damages and market efficiency.

In contrast, the Settlements confer immediate, reasonable, and valuable cash benefits to Class Members –negating the very real risks to recovery posed by continued litigation under the unique circumstances of this case. As explained by the Ninth Circuit, where as here, the financial condition of the Defendants is

1    strained, this factor weighs in favor of approving the Settlement and

2    "predominate[s]" over the other factors. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d

3    1370, 1376 (9th Cir. 1993)  (financial condition of the Company "predominated"

4    over other factors in favor of settlement); *see also In re Ikon Office Solutions, Inc.*,

5    194 F.R.D. 166, 183 (E.D. Pa. 2000) .

6          This case presents the unusual situation where the merits, based on

7    currently-available evidence and information, are in Plaintiffs' favor, yet such

8    strength is of little import in light of the costs of continued litigation and the dire

9    financial condition of the Settling Defendants which leaves little to no prospect of

10   recovering a greater amount even if judgments were obtained.

11                    **3.      The Amount Offered in the Settlement**

12         Settling Defendants' agreement to pay $631,600 in cash to the Class will

13   provide a fair and reasonable recovery under the circumstances. According to

14   Plaintiffs' calculations, Class Members' estimated maximum damages in this case

15   are approximately $9.1 million.  Thus, the percentage recovery for Class Members

16   will be approximately 7% of their best case scenario of damages.  While it is not

17   high in percentage terms, it is an excellent result given the risks inherent in this

18   litigation.

19         Settlements with far lower percentages have been consistently approved.

20   *See* Ellen M. Ryan and Laura E. Simmons, Securities Class Action Settlements,

21   2010 Review and Analysis, at 5[4] (finding that between 1996 and 2009, securities

22   class actions settled for an average of 3.4% of plaintiff-style damages); *In re*

23   *Cendant Corp. Sec. Litig.*, 109 F. Supp. 2d 235, 245 (D.N.J. 2000) (citing: (1)

24   study of 377 securities class action settlements which found that the average

25   settlement comprises between 9% and 14% of claimed damages and (2) cases

26

27   ──────────────────
     [4]   Available at http://securities.stanford.edu/Settlements/REVIEW_1995-
28   2010/Settlements_Through_12_2010.pdf <.>

which settled for 1.6-10% of claimed damages).  This figure is based on the gross recovery in cases, before the deduction of attorneys' fees and expenses.   Here, the Settlement represents 7% of maximum damages.  When compared with the "present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing," the settlements are fair. *See In re Warfarin Sodium Antirust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004).  This is especially true given the risks of collection were a judgment to be obtained.

In addition, settlements in cases involving Chinese issuers have proven to be considerably lower than typical securities settlements against U.S. Companies, garnering the label "China discount." Jessica Seah, DECLINE IN SECURITIES LITIGATION AGAINST U.S.-LISTED CHINESE COMPANIES, The Asian Lawyer (Jan. 30, 2013).  Because of this risk, the only secure source of recovery is therefore any insurance, which would be substantially depleted by litigating the case to trial.  Each of these factors supports the reasonableness of the settlement.

Finally, Plaintiffs' estimated recovery figure is based upon their calculation of provable damages, and does not take into account the various defenses described above and the risks of ongoing litigation. *See* Joint Decl., ¶39.  If a jury chose to credit Defendants' expert(s) over Plaintiffs' expert, in whole or in part this could have substantially reduced the total amount of damages.  Consequently, had the case been tried, there was a fair possibility that the damages ultimately proved could have been much lower. *See, e.g., Heritage*, 2005 WL 1594403, at *7 (citing *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 282-83 (S.D.N.Y. 1999) (recounting instances where settlement was rejected by a court only to have the recovery generated by continued litigation ultimately be less than the proposed settlement).

### 4. <u>Risk of Maintaining a Class Action</u>

Even though the court granted class certification, such an order is conditional. Rule 23(c)(1) expressly provides that a class certification order may be "altered or amended before final judgment." *See, e.g., Viscaino v. U.S. District Court*, 173 F.3d 713, 721 (9th Cir. 1999) (certification order may be altered or amended "before the decision on the merits"). Consequently, where maintaining a class action to judgment is an expensive and risky enterprise, a fair and reasonable settlement is preferable to years of uncertainty. *See Heritage*, 2005 WL 1594403, at *6 ("[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results")(citing *National Rural Telecom. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (internal quotation omitted)). Similarly, because the scope of a classwide judgment is a greater detriment to Defendants than an individual action, even after an adjudication on the merits, Defendants will almost certainly appeal, and may be successful. *See, e.g., National Rural*, 221 F.R.D. at 527 (if a class action obtains a successful judgment, an appeal is likely to follow); *see also Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal); *Sumitomo Copper*, 189 F.R.D. at 282-83. Accordingly, this factor supports approval of the Settlements.

### 5. <u>Stage of the Proceedings</u>

Plaintiffs had sufficient information to evaluate their case and to assess the propriety of a settlement. Here, by the time the Settlements were reached, Co-Lead Counsel had: (1) conducted an extensive investigation of the facts alleged and drafted and filed an extensive amended complaint (2) successfully defeated Defendants' motions to dismiss; and (3) successfully certified a class. Joint Dec. ¶¶6.

Plaintiffs were thus in an excellent position to evaluate the strengths and weaknesses of their allegations against Defendants, and the defenses raised thereto, as well as the substantial risks of continued litigation, and to be in a position to conclude that the settlements provide a fair, reasonable and adequate recovery, and that it is in the best interests of the Class. Having sufficient information to properly evaluate the Litigation, Plaintiffs have managed to settle this Litigation on terms very favorable to the Class under the circumstances and without the substantial additional expense, risk, and uncertainty of continued litigation. This factor weighs in favor of this Court's approval of the settlements.

   6. **Experienced Counsel Concur that the Settlements, Which Were Negotiated in Good Faith and at Arm's-Length, Are Fair, Reasonable, and Adequate**

Experienced counsel's judgment that the Settlements are fair under the circumstances weighs strongly in favor of approval of the Settlements. "[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight." *Ellis*, 87 F.R.D. at 18; *see also National Rural*, 221 F.R.D. at 528 ("'Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation'") (quoting *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y.1997)). And "a presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced capable counsel after meaningful discovery." *Manual for Complex Litigation* (Third) § 30.42 (1995).

This case has been litigated by experienced and well-respected counsel on both sides, who specialize in securities litigation. *See* Joint Decl., ¶¶49-51, Exs. 2-3 to the Joint Decl. Accordingly, this factor weighs in favor of the Settlements. The Settlements were reached only after the Lead Plaintiffs, on behalf of the Class, and the Settling Defendants engaged in intense settlement discussions over many

months. Lead Plaintiffs and the Settling Defendants understood the strengths and weaknesses of their respective positions in the litigation. Co-Lead Counsel conducted a thorough investigation of the claims in the Action, which included a review of publicly available information; consultation with experts; legal analysis of the claims against Defendants and their potential defenses; and analysis of the financial condition of the Settling Defendants. Lead Plaintiffs, sophisticated investors of the type favored for the lead plaintiff position by Congress in enacting the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4 *et seq.*, have closely supervised this litigation and recommend that the Settlements be approved. Further, Co-Lead Counsel, who have extensive experience in prosecuting securities and other class actions, have concluded that the Settlements are in the best interests of the Class.

### 7.    <u>The Reaction of the Class Members to the Settlement</u>

Pursuant to the Court's Notice Order, 6,861 Notices were sent to Class Members and a Summary Notice was published in *Investors' Business Daily* and the *Globe Newswire. See* Sylvester Dec. at ¶10.  The deadline to file objections to the Settlement and the deadline to request exclusion from the settlement is February 16, 2015.  To date, there have been no objections or valid requests for exclusion. *Id.*  "[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness." *Hanlon,* 150 F.3d at 1027; *see also Mego Fin. Corp.*, 213 F.3d at 459 (that there was only one opt out supports upholding district court's approval of settlement).   This factor also supports approval of the Settlements.

### III.    <u>THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION</u>

The proposed Plan of Allocation should be approved.  "Approval of a settlement, including a plan of allocation, rests in the sound discretion of the

court." *Heritage*, 2005 WL 1594403, at *11 (citing *Class Plaintiffs*, 955 F.2d at 1284 (internal citation omitted)). "To warrant approval, the plan of allocation must also meet the standards by which the...settlement was scrutinized – namely, it must be fair and adequate." *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 668 (E.D. Va. 2001) (citing *Class Plaintiffs*, 955 F.2d at 1284-85; *In re Oracle Sec. Litig.*, No. C-90-931-VRW, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994)). "A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable.  It is also reasonable to allocate more of the settlement to class members with stronger claims on the merits." *Oracle*, 1994 WL 502054, at *1. Therefore, as noted in *MicroStrategy*, 148 F. Supp. 2d at 669:

> "a plan of allocation . . . fairly treats class members by awarding a *pro rata* share to every Authorized Claimant, [even as it] sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue."

The proposed Plan of Allocation was fully described in the Notice sent to the Class as Question 7b. thereof.  *See* Sylvester Decl. Ex. A.  It was formulated by Co-Lead Counsel in consultation with an independent damages expert, with the goal of reimbursing Class members in a fair and reasonable manner.  The compensable loss per share ("Recognized Loss") of each claimant is calculated according to the following formula: for each share of China Intelligent common stock purchased or otherwise acquired during the Class Period and sold on or before the close of trading on March 24, 2011 the Recognized Loss Per share is the difference between the purchase price (not to exceed the offering price of $3.00 per share), and the sale price for each share sold.  For each share of China Intelligent common stock purchased or otherwise acquired during the Class Period and held as of the close of trading on March 24, 2011 the Recognized Loss per share is the

13

difference between the purchase price (not to exceed the offering price of $3.00 per share) and $0.30 per share, the closing price of CIL common stock when it was permitted to begin trading after the end of the Class Period.  The Plan of Allocation does not unfairly discriminate between Class Members. *See* Joint Decl., ¶35.

In short, the Plan of Allocation has a rational basis, Co-Lead Counsel believes it fairly compensates Class Members, and this Court should approve it. *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004) ("When formulated by competent and experienced class counsel, an allocation plan need have only a 'reasonable, rational' basis.").

## IV.   CONCLUSION

Because the Settlements and the Plan of Allocation are fair, reasonable, and adequate, Plaintiffs respectfully request that this Court approve them.

Dated:  February 9, 2015               Respectfully submitted,

GOLD BENNETT CERA & SIDENER LLP

_____/s/Thomas C. Bright_____
Thomas C. Bright

- and –
THE ROSEN LAW FIRM P.A.

_____/s/Laurence M. Rosen_____
Laurence M. Rosen

Co-Lead Counsel for Plaintiffs and the Class

14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 9, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record in this action.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on February 9, 2015.

s/Thomas C. Bright
Thomas C. Bright