UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS - 6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-2768 PSG (SSx) | Date | March 9, 2015 |
|---|---|---|---|
| Title | In re China Intelligent Lighting & Electronics, Inc. | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge |
|---|---|
| Wendy Hernandez | Not Reported |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
| Not Present | Not Present |

**Proceedings (In Chambers):** Order GRANTING Plaintiffs' motion for final approval of class settlement, attorneys' fees and costs, and reimbursement of claims administration expenses.

Before the Court is Plaintiffs' motion for final approval of class settlement, attorneys' fees and costs, and reimbursement of claims administration expenses. Dkt. # 271. Pursuant to the Court's September 9, 2014 Order granting preliminary approval of the class settlement ("Preliminary Approval Order"), the parties have filed additional memoranda discussing the settlement agreement. Dkts. # 263, 268, 269, 281, 278. The Court held a fairness hearing on March 9, 2015. Having considered the arguments in all of the submissions, as well as those raised at the March 9, 2015 fairness hearing, the Court GRANTS Plaintiffs' motion.

I.   Background

China Intelligent Lighting and Electronics, Inc. ("CIL") manufactures LED lighting products in China, through a Chinese operating subsidiary. *See FAC* ¶ 16. In 2010, CIL conducted three stock offerings in the United States. *See id.* ¶¶ 60, 62. As part of those offerings, CIL filed several registration statements and prospectuses containing information about CIL's financial condition with the Securities and Exchange Commission ("SEC") (collectively, the "Offering Documents"). *See id.* ¶¶ 1-2. Some of those filings included audited financial statements. *See id.* ¶¶ 61-62. Plaintiffs allege that CIL's Offering Documents overstated CIL's revenues, gross profits, net income, total assets, and shareholder equity. *See id.* ¶¶ 66, 73.

Lead Plaintiffs Perrit Emerging Opportunities Fund, Acerco SA, and Antoine de Sejournet filed suit against: CIL;[1] various officers and directors of CIL who signed the Offering

---

[1] On September 18, 2014, the Court granted Plaintiffs' motion seeking a default judgment against CIL. *See* Dkt. # 264.

**UNITED STATES DISTRICT COURT**     JS - 6
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-2768 PSG (SSx) | Date | March 9, 2015 |
|---|---|---|---|
| Title | In re China Intelligent Lighting & Electronics, Inc. | | |

Documents (the "Individual CIL Defendants");[1] WestPark Capital, Inc. ("WestPark") and Rodman & Renshaw, LLC ("Rodman & Renshaw"), who served as the underwriters for CIL's stock offerings;[2] WestPark Chief Executive Officer and owner Richard Rappaport ("Rappaport"); Rodman & Renshaw President and Chief Executive Officer Edward Rubin ("Rubin"); Rodman & Renshaw Head of Investment Banking John Borer ("Borer");[3] and MaloneBailey LLP ("MaloneBailey") and Kempisty & Company, P.C. ("Kempisty"), CIL's auditors for the financial statements in the Offering Documents. *See id.* ¶¶ 16-44. Plaintiffs brought claims under Sections 11, 12, and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77k, 77l(a)(2), and 77o. *See id.* ¶¶ 133-167.

> On October 25, 2013, the Court certified a class (the "Class") defined as:
> All persons and entities who purchased or otherwise acquired the common stock of China Intelligent Lighting and Electronics, Inc. ("CIL" or the "Company") pursuant or traceable to two (2) separate Registration Statements and three (3) accompanying Prospectuses filed with the U.S. Securities and Exchange Commission ("SEC") by CIL.

Dkt. # 236. The Class was certified with respect to Plaintiffs' causes of action for: (1) violations of Section 11 of the Securities Act (against all Defendants other than Rappaport, Rodman & Renshaw, Rubin, and Borer); (2) violations of Section 12(a)(2) of the Securities Act (against WestPark); and (3) violations of Section 15 of the Securities Act (against Rappaport and Individual Defendants Li Xuemei and Kui Jiang). *See id.*

After two rounds of motions to dismiss, class certification, and settlement negotiations that spanned over eighteen months, Plaintiffs reached proposed settlements (the "Settlement Agreements") with WestPark, Kempisty, and MaloneBailey (collectively, the "Settling Defendants"). *See Joint Declaration of Thomas C. Bright and Laurence M. Rosen* ("Bright and Rosen Declaration") ¶¶ 5-6, 28-34.

Under the Settlement Agreements, MaloneBailey will contribute 1/3 of the amount remaining on its insurance policy applicable to this claim towards a gross settlement fund

---

[1] This matter has been pending for over four years and Plaintiffs have neither filed proofs of service showing the Court that they have properly served the Individual Defendants, nor have they shown good cause for further extensions of the deadline imposed by the Federal Rules of Civil Procedure. *See Fed. R. Civ. P.* 4(m). Accordingly, the Court DISMISSES the Individual Defendants for failure to prosecute.

[2] All proceedings against Rodman & Renshaw have been stayed due to the company's bankruptcy. *See* Dkt. # 191.

[3] The Court dismissed Plaintiffs' claims against Rubin and Borer on September 5, 2012. *See* Dkt. # 161.

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-2768 PSG (SSx) | Date | March 9, 2015 |
|---|---|---|---|
| Title | In re China Intelligent Lighting & Electronics, Inc. | | |

($524,100). *See MaloneBailey Settlement* § A.26; *Bright and Laurence Decl.* ¶ 9. Kempisty will pay $7,500. *See Kempisty Settlement* § A.25. WestPark Capital Financial Services, LLC ("WPCFS") – WestPark's parent company – will pay $100,000, over the course of twelve months. *See WestPark Settlement* §§ A.25, C.2.

The gross settlement amount will be used to pay notice and administration expenses, any attorneys' fees and costs authorized by the Court, any incentive awards to the Lead Plaintiffs authorized by the Court, and any other expenses authorized by the Court. *See MaloneBailey Settlement* § C.2; *Kempisty Settlement* § C.3; *WestPark Settlement* § C.5. The remaining amount, after taxes, will be transferred to the net settlement fund and will be distributed among Class members. *See MaloneBailey Settlement* § C.2; *Kempisty Settlement* § C.3; *WestPark Settlement* § C.5.

The Settlement Agreements provide that Class Counsel may seek attorneys' fees in the amount up to one third of the gross settlement fund, and up to $100,000 in litigation costs and expenses. *See MaloneBailey Settlement* § H.1; *Kempisty Settlement* § H.1; *WestPark Settlement* § H.1. Under the terms of the Settlement Agreements, Class Counsel may also seek additional fees related to the administration of the settlement, and incentive awards for the Lead Plaintiffs. *See MaloneBailey Settlement* § H.1; *Kempisty Settlement* § H.1; *WestPark Settlement* § H.1.

Additionally, as part of the Settlement Agreements, the Settling Defendants agreed to cooperate with respect to Plaintiffs' remaining claims. MaloneBailey agreed to produce relevant documents without objection, and to reasonable depositions. *See MaloneBailey Settlement* § M.3. Kempisty, WestPark, and Rappaport agreed to provide relevant documents, without objection. *See Kempisty Settlement* § M.2; *WestPark Settlement* § M.2.

In return, Plaintiffs and Class Members will release their claims against MaloneBailey, Kempisty, and the WestPark Defendants (WestPark, Rappaport, WPCFS, and Anthony Pintsopoulos).[5]

Plaintiffs filed a motion for preliminary approval of the Settlement Agreements that the Court granted on September 9, 2014. *See* Dkts. # 255; 263, *Prelim. Approval Order*. The Court also appointed Gilardi & Co. LLC as Claims Administrator (the "Claims Administrator") and approved Plaintiffs' proposed notice to the putative Class Members. *Prelim. Approval Order* at 7.

---

[5] Anthony Pintsopoulos was named as a defendant in Plaintiffs' Consolidated Amended Complaint. *See CAC* ¶ 32. The Court dismissed the claims against him without prejudice, and Plaintiffs did not re-assert them in the operative FAC. *See* Dkt. # 131, *FAC*. WPCFS has never been a party to this litigation. *See CAC; FAC*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS - 6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-2768 PSG (SSx) | Date | March 9, 2015 |
|---|---|---|---|
| Title | In re China Intelligent Lighting & Electronics, Inc. | | |

After the Court granted preliminary approval, the Claims Administrator executed the notice plan by sending notice and proof of claim and release forms ("Claim Packages") to putative Class members. The Claims Administrator "has sent a total of 6,861 Claim Packages to potential class members and nominees." *Declaration of Carole K. Sylvester* ("Sylvester Declaration") ¶¶ 3-10. Additionally, the Claims Administrator had a Summary Notice published in *Investor's Business Daily*. *Id.* ¶ 13. Putative Class members had until February 4, 2015 to mail and postmark proof of claim forms and until February 16, 2015 to mail and postmark exclusion forms. *Id.* ¶¶ 14,15. The Claim Administrator informed the Court that as of February 9, 2015, it has received 183 proof of claim forms and no exclusion forms. *Id.* ¶ 15. Additionally, "no objections have been filed to the proposed Settlements." *Reply* 1:1-4.

Plaintiffs now seek final approval of the Class Settlement Agreement and the Plan of Allocation, as well as attorneys' fees, costs, and reimbursement of claims administration expenses. *Notice of Mot.*[6]

II.    Discussion

      A.    Final Approval of the Class Action Settlement

           *i.*    *Legal Standard*

A court may approve a class action settlement "only after a hearing and on finding that [the settlement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(a)(2). In determining whether a settlement is fair, reasonable, and adequate, the district court must "balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Hanlon v. Chrysler Corp.*, 150 F. 3d 1011, 1026 (9th Cir. 1998); *see Staton v. Boeing Co.*, 327 F. 3d 938, 959 (9th Cir. 2003). In addition to exploring these factors, the Court will also explore whether the settlement is a product of collusion among the negotiating parties. *See In re Bluetooth Headset Prods. Liab. Litig*, 654 F. 3d 935, 947 (9th Cir. 2011).

The Court must approve or reject the settlement as a whole. *See Hanlon*, 150 F. 3d at 1026 ("It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness."). The Court may not delete, modify, or rewrite particular provisions of the settlement. *Id.* The Court must recognize that the settlement "is the offspring of compromise [,] [and] the question . . . is not whether the final product could be

---

[6] Plaintiffs do not seek incentive awards. *See Mem. i/s/o Atty. Fees* n.14.

Case 2:11-cv-02768-PSG-SS Document 289 Filed 03/09/15 Page 5 of 14 Page ID #:4346

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-2768 PSG (SSx) | Date | March 9, 2015 |
|---|---|---|---|
| Title | In re China Intelligent Lighting & Electronics, Inc. | | |

prettier, smarter, or snazzier, but whether it is fair, adequate and free from collusion." *Id.* at 1027.

    ii.    *Discussion*

After evaluating the papers submitted by the parties, the Court is convinced that the Settlement Agreements are fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(a)(2).

    a.  *Strength of the Plaintiffs' Case*

Although Plaintiffs believe that they have strong claims against the Settling Defendants, they are cognizant that they face many challenges that could lead to no recovery for the Class members. *See Mem. i/s/o Final Settlement* 5:5-7:2; *Plaintiffs' Confidential Mem.* 14:21-15:12; *In re Heritage Bond Litig.*, 2005 WL 1594403, at *7 (C.D. Cal. 2005) ("It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced.") (citations omitted). Plaintiffs' claims are grounded in the allegation that CIL "overstated its financial performance to raise money from investors in an initial public offering and secondary offering of common stock in the United States" in violation of the Securities Act. *Id.* 5:10-16. Plaintiffs assert that MaloneBailey and Kempisty, as CIL's auditors, "failed to conduct a diligent investigation into the veracity" of the alleged false statements. *Id.* 5:16-23. Additionally, they aver that "WestPark and Rappaport, as CIL's Underwriters, are covered persons under the applicable statutes and therefore are liable for CIL's misstatements." *Id.* 5:23-25.

First, Plaintiffs note that the Settling Defendants would argue that Plaintiffs' losses were caused by "factors other than the alleged misstatements" which could lead to a "battle of the experts" in front of a jury. *Id.* 6:11-15. Furthermore, Plaintiffs admit that there is no guarantee that they could prevail against the Settling Defendants' due diligence defenses. *Id.*6:1-3; 6:24-7:2. After considering Plaintiffs' motion, as well as the confidential memoranda submitted by the Parties, the Court agrees that this factor weighs in favor of approving the Settlement Agreements. *See Plaintiffs' Confidential Mem.; MaloneBailey Confidential Mem.; WestPark Confidential Mem.; Kempisty Confidential Mem.*

    b.  *Risk, Expense, Complexity, and Duration of Further Litigation*

In light of the "strong judicial policy that favor[s] settlements, particularly where complex class action litigation is concerned," *Linney v. Cellular Alaska P'ship*, 151 F. 3d 1234, 1238 (9th Cir. 1998), the Court finds that this factor weighs in favor of approval of the settlement.

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-2768 PSG (SSx) | Date | March 9, 2015 |
|---|---|---|---|
| Title | In re China Intelligent Lighting & Electronics, Inc. | | |

Although the Parties have engaged in significant motion practice – two motions to dismiss and a class certification motion – Plaintiffs predict that discovery in preparation for potential motions for summary judgment and trial would prove to be risky, costly, and reduce the possible recovery for the Class. *Mem. i/s/o Final Settlement* 7:4-8:10. The risk of no recovery to the class is particularly daunting in light of the Settling Defendants' precarious financial situation. *See id.; MaloneBailey Confidential Mem.* 6:2-9:26; *WestPark Confidential Mem.* 7:9-25; *Kempisty Confidential Mem.* 2:19-3:19. Furthermore, Plaintiffs point out that CIL conducts all of its operations in the People's Republic of China – which does not allow depositions – so Parties would expend significant resources for the translation of documents and testimony as well as travel. *Mem. i/s/o Final Settlement* 7:9-22. The Parties submit, too, that the necessity of experts would add significant expenses to the continued prosecution of this litigation. *Mem i/s/o Final Settlement* 7:21-23; *WestPark Confidential Mem.* 5:18-24; *Kempisty Confidential Mem.* 2:21-24. The Settlement Agreements, in contrast, "confer immediate . . . and valuable cash benefits to Class Members." *Mem. i/s/o Final Settlement* 7:24-25.

c. *Risk of Maintaining Class Action Status Through Trial*

Although the Court has certified the Class, Plaintiffs are correct that under Federal Rule of Civil Procedure 23(c)(1)(C) an "order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C); *Mem. i/s/o Final Settlement* 10:1-20. Other than pointing out that the Court could decertify the Class, however, Plaintiffs do not offer compelling arguments that this factor weighs in favor of Final Approval. Nonetheless, the Court sees this factor as neutral because it also does not necessarily weigh against Final Approval.

d. *Amount Offered in Settlement*

The Settling Defendants will contribute a total of $631,600 to the gross settlement amount. *Mem. i/s/o Final Settlement* 8:12-14.

"[T]he very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F. 2d 615, 624 (9th Cir. 1982) (citations omitted). In that vein, the Ninth Circuit has explained that "it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id.* at 625 (citations omitted). Rather, any analysis of a fair settlement amount must account for the risks of further litigation and trial, as well as the expenses and delay associated with continued litigation.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS - 6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-2768 PSG (SSx) | Date | March 9, 2015 |
|---|---|---|---|
| Title | In re China Intelligent Lighting & Electronics, Inc. | | |

Here, the Court recognizes that the gross settlement amount constitutes only around 7% of Plaintiffs' estimated damages of $9.1 million – the Net Settlement Amount ($318,700) would be around 3.5% – but finds that amount reasonable considering the circumstances of this case. *See Mem. i/s/o Final Settlement* 8:12-16; *Mem. i/s/o Atty. Fees* 3:4-13. First, Plaintiffs' estimate does not "take into account the various defenses" available to the Settling Defendants described above or the risks of ongoing litigation. *Mem. i/s/o Final Settlement* 9:15-17. Second, because many of the Defendants reside in the People's Republic of China, there are serious risks that even if Plaintiffs were successful in all aspects of their claims they may be unable to collect a jugment. *Id.* 9:6-7. Third, after reviewing the Settling Defendants' confidential memoranda, the Court is persuaded that this amount is the maximum amount that Defendants can contribute to the gross settlement amount. *MaloneBailey Confidential Mem.* 6:2-8:2 (explaining that it "has no assets to respond to claims against it other than the applicable policy of professional liability insurance" and that it is dividing those assets amongst this action and two others)*; WestPark Confidential Mem.* 6:9-25 (writing that it is "paying an amount at the absolute top of its ability to pay" and describing Plaintiffs' review of its financial documents)*; Kempisty Confidential Mem.* 3:7-19 (same).

Considering the risks inherent in this litigation and the Settling Defendants' financial situation, this factor weighs in favor of Final Approval.

e. *Extent of Discovery and Stage of the Proceedings*

This factor requires the Court to gauge whether Plaintiffs have sufficient information to make an informed decision about the merits of their case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F. 3d 454, 459 (9th Cir. 2000). The more discovery that has been completed, the more likely it is that the parties have "a clear view of the strengths and weaknesses of their cases." *Young v. Polo Retail, LLC*, No. C-02-4546 VRW, 2007 WL 951821, at *4 (N.D. Cal. Mar. 28, 2007) (internal quotation marks and citation omitted).

Although the Parties have not engaged in discovery, Plaintiffs have sufficient information to make an informed decision in this instance. Before reaching the Settlements, Plaintiffs had "(1) conducted an extensive investigation of the facts alleged and drafted and filed an extensive amended complaint[,] (2) successfully defeated Defendants' motions to dismiss; and (3) successfully certified a class." *Mem. i/s/o Final Settlement* 10:22-27; *Bright and Rosen Decl.* ¶¶ 16-34. Plaintiffs, then, did not negotiate these Settlement Agreements in a vacuum, but evaluated "the strength and weaknesses of their allegations against Defendants . . . as well as the substantial risks of continued litigation" before entering into these agreements. *Mem. i/s/o Final Settlement* 11:1-5. This factor weighs in favor of granting Final Approval.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS - 6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-2768 PSG (SSx) | Date | March 9, 2015 |
|---|---|---|---|
| Title | In re China Intelligent Lighting & Electronics, Inc. | | |

f.  *Experience and Views of Counsel*

The recommendations of Plaintiffs' counsel are given a presumption of reasonableness. *See, e.g.*, *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (citation omitted). "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re. Pac. Enter Sec. Litig.*, 47 F. 3d 373, 378 (9th Cir. 1995).

Here, Plaintiffs' Counsel "believe the Settlement[s] represent[] a realistic assessment by both sides of the strengths and weaknesses of their respective claims and defenses, as well as the risks of further litigation and enforcing a judgment, and [are] fair, reasonable and adequate settlement[s]." *Bright and Rosen Decl.* ¶¶ 7, 59-62. Furthermore, Class Counsel submit that they have "significant experience in securities and other complex class action litigation and have negotiated numerous other substantial class action settlements throughout the country." *Id.* ¶ 60. The Court sees no evidence to the contrary and, as such, finds that this factor weighs in favor of Final Approval.

g.  *Presence of a Governmental Participation*

This factor is neutral, as no government entities are participating in this case.

h.  *Reaction of Class Members*

The response to the Settlement strongly suggests that the Class finds the settlement to be fair, reasonable, and adequate. *See, e.g.*, *Hanlon*, 150 F. 3d at 1027 ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness."). Although only 183 proofs of claim forms had been submitted by February 9, 2015, after the Claims Administrator mailed out 6,861 Claim Packages to potential class members and nominees, putative class members have neither mailed exclusion forms nor objected to the Settlement Agreements. *See Sylvester Declaration* ¶¶ 3-10, 15; *Reply* 1:1-4. Accordingly, this factor weighs slightly in favor of Final Approval.

i.  *Collusion Among the Negotiating Parties*

The Court also finds that the Settlement Agreement is free from collusion, which weighs in favor of settlement approval. The Ninth Circuit puts "a good deal of stock in the product of arms-length, non-collusive, negotiating resolution . . ." *Rodriguez v. W. Publ'g Corp.*, 563 F. 3d 948, 965 (9th Cir. 2009).

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-2768 PSG (SSx) | Date | March 9, 2015 |
|---|---|---|---|
| Title | In re China Intelligent Lighting & Electronics, Inc. | | |

Here, Parties have submitted memoranda assuring the court that the Settlement Agreements are a product of arms-length, non-collusive negotiations. *See Mem. i/s/o Final Settlement* 11:12-12:12; *MaloneBailey Confidential Mem.* 10:2-3; *WestPark Confidential Mem.* 1:5-9; *Kempisty Confidential Mem.* 1:6-7. The Court sees no evidence to the contrary – especially considering Plaintiffs' reasonable request for attorneys' fees and costs, assessed below, and lack of request for incentive awards for Plaintiffs – and finds that this factor weighs in favor of final approval.

The factors weigh in favor of approval of the settlement. *See Hanlon*, 150 F. 3d at 1026. Accordingly, the Court GRANTS Plaintiffs' motion for Final Approval of the Settlement Agreements.

  B.  <u>Plan of Allocation</u>

A plan of allocation under Rule 23 "is governed by the same standards of review applicable of the settlement as a whole; the plan must be fair, reasonable, and adequate." *Vinh Nguyen v. Radient Pharma. Corp.*, 2014 WL 1802293, at *5 (C.D. Cal. 2014). To be approved, the plan needs to have a reasonable, rational basis. *Id.* Specifically, within the context of a securities class action, a plan can be reasonable if it, "fairly treats class members by awarding a pro rata share to every Authorized Claimant, but also sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue." *Id.* (citing In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 669 (E.D. Va. 2001).

Under Plaintiffs' Plan of Allocation, Class Members who submit claim forms will receive a *pro rata* share of the net settlement amount that will be based upon the date of purchase and sale transaction dates. *Bright and Rosen Decl.* ¶ 67. Specifically, the Plan of Allocation uses a Recognized Loss value calculated for each share – which depends on when that share was purchased and sold – and will distribute them on a *pro rata* basis according to each claimant's Recognized Loss. *Id.; Mem. i/s/o Final Settlement* 13:16-14:9. The Plan of Allocation is reasonable and has a rational basis.

Therefore, the Court GRANTS Plaintiffs' motion for approval of the Plan of Allocation.

  C.  <u>Motion for Attorneys' Fees and Costs</u>

Plaintiffs request the following to be disbursed from the gross settlement amount: (1) $157,900 (which constitutes 25% of the gross settlement amount); (2) $70,000 in litigation expenses; and (3) $85,000 in notice and administration expenses. *Mem. i/s/o Atty. Fees* 3:4-13.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS - 6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-2768 PSG (SSx) | Date | March 9, 2015 |
|---|---|---|---|
| Title | In re China Intelligent Lighting & Electronics, Inc. | | |

*i.     Legal Standard*

Awards of attorneys' fees in class action cases are governed by Federal Rule of Civil Procedure 23(h), which provides that after a class has been certified, the Court may award reasonable attorneys' fees and nontaxable costs.  The Court "must carefully assess" the reasonableness of the fee award.  *See Staton*, 327 F. 3d at 963; *see also Browne v. Am. Honda Motor Co., Inc.*, No. CV 09-06750 MMM (DTBx), 2010 WL 9499073, at *3-5 (C.D. Cal. Oct. 5, 2010) (explaining that in a class action case, the court must scrutinize a request for fees when the defendant has agreed to not oppose a certain fee request as part of a settlement).

Where litigation leads to the creation of a common fund, courts can determine the reasonableness of a request for attorneys' fees using either the common fund method or the lodestar method.  *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F. 3d 935, 942, 944-45 (9th Cir. 2011) (finding that when a settlement establishes a common fund for the benefit of a class, courts may use either the lodestar method or the percentage-of-recovery method to gauge the reasonableness of a fee request, but encouraging courts to employ a second method as a cross-check after choosing a primary method.).  The Court will analyze Counsels' fee request under both theories.

*ii.     Discussion*

*a.     Percentage of the Common Fund*

Under the percentage-of-recovery method, courts typically calculate 25% of the fund as a benchmark for a reasonable fee award.  *See In re Bluetooth*, 654 F. 3d at 942  ("courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award").[7]  The percentage can range, however, and Courts have awarded more than 25% of the fund as attorneys' fees when they have deemed a higher award to be reasonable.  *See Singer v. Becton Dickinson and Co.*, 2010 WL 2196104, at * 8 (S.D. Cal. 2010) (finding an award of 33.3% percent of the common fund to be reasonable because class counsel took case on a contingent basis and litigated for two years, awards usually range from 20% to 50%, and no class member objected to the award); *Gardner v. GC Services, LP*, 2012 WL 1119534, at *7 (S.D. Cal. 2012) (finding that a departure from the 25% benchmark was reasonable when 1) the results achieved for the class were very

---

[7]The Court notes that in calculating attorneys' fees using the common fund method, it is appropriate to take a percentage of the Gross Settlement Amount, not of the amount claimed by the Class Members.  *See Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980), 480-81 (finding that under the common-fund doctrine class counsel are entitled to a reasonable fee based on the funds "awarded to the prevailing class").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS - 6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-2768 PSG (SSx) | Date | March 9, 2015 |
|---|---|---|---|
| Title | In re China Intelligent Lighting & Electronics, Inc. | | |

favorable, 2) the risks of litigation were substantial, and 3) the case was complex). When assessing the reasonableness of a fee award under the common fund theory courts consider, *inter alia*, "(1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." *In re Omnivision Technologies*, 559 F. Supp. 1036, 1046 (N.D. Cal. 2008) (citing *Vizcaino v. Microsoft Corp.*, 290 F. 3d 1043, 1048-50 (9th Cir. 2002)).

Plaintiffs' request of 25% of the gross settlement amount – this Circuit's benchmark percentage for reasonableness – carries with it a presumption of reasonableness. *See Mem. i/s/o Atty. Fees* 8:10-26. Consideration of these factors also supports a finding of reasonableness in this instance. *See In re Omnivision Technologies*, 559 F. Supp. at 1046. As elaborated above, Class Counsel has been able to obtain a reasonable result for the Class Members in light of many challenges and uncertainties. This is especially significant because there is a real risk that even if Plaintiffs prevail in all aspects of litigation, they may end up with no recovery for the Class Members. *See Mem. i/s/o Atty Fees.* 9:20-10:2.

Class Counsel faced significant risks in their prosecution of this case that ranged from difficulty prevailing on substantive issues – discussed at length above – to being unable to recover any funds in spite of a complete victory. *Id.* 10:5-13:24. Additionally, litigating a matter where many of the relevant documents originated in the People's Republic of China required Class Counsel to overcome many logistical barriers. *Id.* 14:6-9. As Plaintiffs also point out, Class Counsel litigated this case for more than two years before the SEC filed a complaint related to the matter, without "the benefit of a governmental investigation." *Id.* 14:18-15:3. The "fee in this matter was entirely contingent" and favors approval of the requested fee. *Id.* 17:1-7. Class Counsel "committed significant resources of both time and money to the vigorous and successful prosecution of this action." *Id.* 17:3-6. Lastly, an award of 25% of the gross settlement amount is consistent with awards granted in similar complex litigation. *See In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 433 (S.D.N.Y. 2001) (awarding fee which constituted 25% of the gross settlement amount in securities case); *Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008) (noting that fee awards are often more than 25% in under $10 million cases).

Plaintiffs' fee request is reasonable under the common fund theory.

        b.     *Lodestar Cross-Check*

UNITED STATES DISTRICT COURT             JS - 6
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-2768 PSG (SSx) | Date | March 9, 2015 |
|---|---|---|---|
| Title | In re China Intelligent Lighting & Electronics, Inc. | | |

Plaintiffs submit that under a lodestar method, they are entitled to $988,614 and, as mentioned above, they are only requesting $157,900. *See Mem. i/s/o Atty. Fees* 19:17-20:9. Plaintiffs' request is also reasonable under a lodestar cross-check analysis.

To determine attorneys' fees under the lodestar method a court must first calculate the lodestar by "multiplying the reasonable hours expended by a reasonable hourly rate. The Court may then enhance the lodestar with a 'multiplier,' if necessary, to arrive at a reasonable fee." *In re Washington Public Power Supply System Securities Litig.*, 19 F. 3d 1291, 1294 n.2 (9th Cir. 1994) (citations omitted).

*1. Reasonable Rate*

The reasonable hourly rate is the rate prevailing in the community for similar work. See *Gonzalez v. City of Maywood*, 729 F. 3d 1196, 1200 (9th Cir. 2013) ("[T]he court must compute the fee award using an hourly rate that is based on the 'prevailing market rates in the relevant community.'") (citation omitted); *Viveros v. Donahue*, CV 10-08593 MMM (Ex), 2013 WL 1224848, at *2 (C.D. Cal. 2013) ("The court determines a reasonable hourly rate by looking to the prevailing market rate in the community for comparable services."). The relevant community is the community in which the court sits. *See Schwarz v. Sec. of Health & Human Servs.*, 73 F. 3d 895, 906 (9th Cir. 1995). In an applicant fails to meet its burden, the Court may exercise its discretion to determine reasonable hourly rates based on its experience and knowledge of prevailing rates in the community. *See, e.g.*, *Viveros*, 2013 WL 1224848, at *2; *Ashendorf & Assocs. V. SMI-Hyundai Corp.*, CV 11-02398 ODW (PLAx), 2011 WL 3021533, at *3 (C.D. Cal. 2011); *Bademyan v. Receivable Mgmt. Servs. Corp.*, CV 08-00519 MMM (RZx), 2009 WL 605789, at *5 (C.D. Cal. 2009).

The rates used by Class Counsel to calculate their lodestar amount are lower than the rates of law firms in Los Angeles "who are active in the securities litigation field." *Declaration of Thomas Bright* ("Bright Decl.") ¶ 5 (noting that the average rate for a partner is $928 and $533 for an associate). Here, the rate for partners ranges from $600 to $850. *See Bright Decl., Ex. 1*; *Declaration of Laurence Rosen* ("Rosen Decl.") ¶ 4. The rates for associates, on the other hand, range from $425 to $550. *See Bright Decl., Ex. 1*; *Rosen Decl.* ¶ 4. Class Counsel also include in their lodestar an amount attributable to paralegal work with a rate of $200. *See Bright Decl., Ex. 1*; *Rosen Decl.* ¶ 4. The Court has reviewed Class Counsel's submissions regarding the experience and qualifications of the attorneys who worked on this case. After considering Class Counsel's statements regarding market rates for attorneys in this field and the Court's own experience with hourly rates in the Los Angeles area, the Court is not convinced that the requested rates are reasonable and will use, instead, a blended rate of $600 for partners and $425

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-2768 PSG (SSx) | Date | March 9, 2015 |
|---|---|---|---|
| Title | In re China Intelligent Lighting & Electronics, Inc. | | |

for associates. As discussed below, however, the change in rate does not change the Court's finding that the request is reasonable in light of the negative multiplier.

2. *Reasonable Hours Expended*

With regard to the hours expended, an attorney award should include compensation for all hours reasonably expended prosecuting the matter, but "hours that are excessive, redundant, or otherwise unnecessary" should be excluded. *Costa v. Comm'r of Soc. Sec. Admin.*, 690 F. 3d 1132, 1135 (9th Cir. 2012).

Here, Class Counsel state that they have expended 1,733 of attorney and paralegal time litigating this matter. *Mem. i/s/o Atty. Fees* 19:22-23. The descriptions of the work, the experience level of the professional completing the work, and the duration of time devoted to particular tasks spanning a time period covering initial research, drafting of complaints, and motion drafting efforts appear proper to the Court. *See Bright Decl., Ex.* 3; *Rosen Decl., Ex. A*. Moreover, the Court does not detect any duplication of work. Therefore, the Court concludes that the hours expended on this case are reasonable. Even if the Court felt inclined to discount the number of hours expended by a small percentage to account for duplication not detected by the Court, the significant negative multiplier that results from Plaintiffs' request renders this fee request reasonable.

3. *Multiplier*

As indicated above, Plaintiffs' fee request constitutes a large negative multiplier of plaintiffs' lodestar amount. Plaintiffs' lodestar amount is $988,614 and they are requesting $157,900. Plaintiffs' request is reasonable in light of the amount of work Class Counsel has expended in this litigation, the risks taken by Class Counsel, and the Settlement Agreements that they procured for the Class Members. *See In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201, at *16 (N.D. Cal. 2007) ("The resulting so-called negative multiplier suggests that the percentage-based amount is reasonable and fair based on the time and effort expended by class counsel.").

Accordingly, the Court GRANTS Plaintiffs' motion for attorneys' fees.

c. *Litigation Costs*

In addition to attorneys' fees, Plaintiffs also request reimbursement of expenses incurred throughout litigation. Although Class Counsel is requesting an award of $70,000, they state that they incurred "$71,065.31 in prosecuting the litigation." *Mem. i/s/o Atty. Fees* 20:16-18. The

UNITED STATES DISTRICT COURT  JS - 6
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-2768 PSG (SSx) | Date | March 9, 2015 |
|---|---|---|---|
| Title | In re China Intelligent Lighting & Electronics, Inc. | | |

Court has reviewed Class Counsels' costs and is satisfied that they are reasonable. Resultantly, the court GRANTS Plaintiffs' motion for costs in the amount of $70,000.

    D.    <u>Motion for Reimbursement of Claims Administration Expenses</u>

Plaintiffs also request reimbursement for the Claims Administrator of $85,000. *Mem. i/s/o Atty. Fees*. The Claims Administrator declares that it has "agreed to cap" its service fees at $85,000, but that "[t]his amount is substantially less than what is typically charged in similar cases." *Sylvester Decl.* ¶¶ 16-17. After reviewing the Claim Administrator's declaration outlining the services it has performed so far and considering the services it will provide in the execution of the Settlement Agreements the Court is satisfied that the estimated claims administration expenses are not unduly expensive. Therefore, GRANTS Plaintiffs' motion for reimbursement of $85,000 for Claims Administration expenses.

III.    <u>Conclusion</u>

For the reasons stated above, Plaintiffs' motions for final approval of class settlement and the plan of allocation; attorneys' fees and costs; and reimbursement of claims administration expenses are GRANTED. Accordingly, it is HEREBY ORDERED AS FOLLOWS:

1. The Court approves settlement of the action between Plaintiffs and the Settling Defendants, as set forth in the Settlement Agreements as fair, just, reasonable and adequate. The Parties are directed to perform their settlement in accordance with the terms set forth in the Settlement Agreements;

2. Class Counsel is awarded $157,900 in attorneys' fees and $70,000 in costs. The Claims Administrator shall also be paid $85,000 from the Settlement Fund. The Court finds that these amounts are warranted and reasonable for the reasons set forth in the moving papers before the Court;

3. The Claims Administrator is authorized to disburse funds from the Settlement Account pursuant to the terms of the Settlement Agreements and this Order.

**IT IS SO ORDERED.**